The accounting firm of Ridley Schweigert ("Ridley"), was employed by Leedy Mortgage Company, Inc. ("Leedy"), to audit financial statements for its fiscal years ending April 30, 1979, 1980, and 1981. In 1982, the accounting firm of Jamison, Money, Farmer Company ("Jamison"), replaced Ridley and audited financial statements for Leedy for the fiscal years ending April 30, 1982 and 1983. The annual financial statements were audited by Ridley and Jamison at Leedy's request only, and, although Leedy was provided with multiple copies of each year's audit, neither Ridley nor Jamison was requested to, or did, provide copies of the audits to anyone other than Leedy. In the course of auditing the financial statements for Leedy, Ridley and Jamison requested that Colonial Bank of Alabama ("Colonial"), one of a number of Leedy's creditors listed on the financial statements, complete certain standard bank confirmation inquiries, as part of Ridley's and Jamison's normal procedures in performing audits. Leedy furnished Colonial with a copy of each of the annual audits. Between 1979 and 1983, Colonial made substantial loans to Leedy. Leedy eventually defaulted on those loans and filed a petition in bankruptcy court. Colonial suffered a loss of approximately $2,500,000. *Page 392 
Colonial sued Ridley and Jamison, under theories of negligence, wantonness, breach of contract (claiming to be a third-party beneficiary), and fraud,[1] in the examination of the financial statements for Leedy. Jamison filed a counterclaim, alleging negligence, fraud, and conspiracy to defraud on Colonial's part. The trial court entered a summary judgment for Ridley and Jamison and dismissed Jamison's counterclaim. Colonial and Jamison appealed. We affirm.
The trial court stated in its judgment that Colonial had not produced any evidence tending to show that Ridley and Jamison were aware, at the time they audited the financial statements, that the audits were to be used by Leedy to influence Colonial. Therefore, the trial court concluded, because Colonial was not in privity of contract with Ridley and Jamison, that Ridley and Jamison owed no duty to Colonial with respect to the manner in which the financial statements were audited and, consequently, that they could not, as a matter of law, be liable to Colonial under theories of negligence or wantonness.
Colonial contends that it was reasonably foreseeable to Ridley and Jamison that Leedy would use the audits to influence Colonial. Therefore, it argues, Ridley and Jamison owed a duty to Colonial to exercise the appropriate degree of care in their examination of the financial statements.
On the other hand, Ridley and Jamison maintain that the trial court correctly concluded that, in the absence of a contractual relationship, they could not be liable to Colonial, as a matter of law, unless they were aware at the time the financial statements were audited that the information contained in the audits was to be used by Leedy specifically to influence Colonial. Ridley and Jamison argue that there is no evidence tending to show that they were aware that the audits were to be used by Leedy for that particular purpose.
 Colonial's Appeal 1. Negligence and Wantonness
This case presents an issue of first impression in the appellate courts of Alabama as to the scope of an accountant's duty to third parties. Blumberg v. Touche Ross Co.,514 So.2d 922, 927 (Ala. 1987), also presented an issue of first impression in determining a client's remedies for an accountant's negligent performance of an accounting services contract. In the case at issue, as in Blumberg, we have examined treatises, law review articles and other secondary sources: Restatement (Second) of Torts § 552 (1977); J. Siliciano, Negligent Accounting and the Limits of InstrumentalTort Reform, 86 Mich.L.Rev. 1929 (1988); T. Gossman, TheFallacy of Expanding Accountants' Liability, 1988 Colum.Bus.L.Rev. 213; T. Gossman, IMC v. Butler: A Case forExpanded Professional Liability For NegligentMisrepresentation? 26 Am.Bus.L.J. 99 (1988); V. Goldberg,Accountable Accountants: Is Third Party Liability Necessary?, 17 J.Legal Stud. 295 (1988); Note, The Role and Responsibilityof Accountants in Today's Society, 13 J. of Corp.L. 863 (Spring 1988); D. Causey, Accountants' Liability In An IndeterminateAmount For An Indeterminate Time To An Indeterminate Class: AnAnalysis of Touche Ross Co. v. Commercial Union Ins. Co.
[514 So.2d 315 (Miss. 1987)], 57 Miss.L.J. 379 (1987); Comments,Auditors' Third Party Liability: An Ill-Considered Extension ofthe Law, 46 Wn.L.Rev. 675 (1970-71); Note, H. Rosenblum, Inc.v. Adler: A Foreseeably Unreasonable Extension of an Auditor'sLegal Duty, 48 Alb.L.Rev. 876 (1984); Broad, The Progress ofAuditing, 100 Journal of Accountancy, November 1955; Annot.,Liability of Public Accountant To Third Parties, 46 A.L.R.3d 979 (1979); and cases of other jurisdictions that have adopted various standards.
California (International Mortgage Co. v. John P. ButlerAccountancy Corp., 177 Cal.App.3d 806, 223 Cal.Rptr. 218
(1986)); *Page 393 
Mississippi (Touche Ross Co. v. Commercial Union InsuranceCo., 514 So.2d 315 (Miss. 1987)); New Jersey (H. Rosenblum,Inc. v. Adler, 93 N.J. 324, 461 A.2d 138 (1983)); and Wisconsin (Citizens' State Bank v. Timm, Schmidt Co. S.C.,113 Wis.2d 376, 335 N.W.2d 361 (1983)), have adopted the foreseeability standard that Colonial urges us to adopt. The Supreme Court of New Jersey in H. Rosenblum, supra, stated this standard in these words:
 "When the independent auditor furnishes an opinion with no limitation in the certificate as [to those] to whom the company may disseminate the financial statements, he has a duty to all those whom that auditor should reasonably foresee as recipients from the company of the statements for its proper business purposes, provided that the recipients rely on the statements pursuant to those business purposes."
461 A.2d at 153.
Alaska (Selden v. Burnett, 754 P.2d 256 (Alaska 1988)); Georgia (Badische Corp. v. Caylor, 257 Ga. 131, 356 S.E.2d 198
(1987)); Hawaii (Chun v. Park, 51 Haw. 462, 462 P.2d 905
(1969)); Iowa (Pahre v. Auditor of the State of Iowa,422 N.W.2d 178 (Iowa 1988)); Kentucky (Ingram Industries, Inc. v.Nowicki, 527 F. Supp. 683 (E.D.Ky. 1981)); Michigan (LawOffices of Lawrence J. Stockler, P.C. v. Rose, 174 Mich. App. 14, 436 N.W.2d 70 (1989)); Minnesota (Bonhiver v. Graff,311 Minn. 111, 248 N.W.2d 291 (1976)); Missouri (Mark Twain PlazaBank v. Lowell H. Listrom Co., 714 S.W.2d 859 (Mo.App. 1986)); New Hampshire (Spherex, Inc. v. Alexander Grant Co.,122 N.H. 898, 451 A.2d 1308 (1982)); North Carolina (RaritanRiver Steel Co. v. Cherry, Bekaert Holland, 322 N.C. 200,367 S.E.2d 609 (1988)); Ohio (Haddon View Investment Co. v. Coopers Lybrand, 70 Ohio St.2d 154, 436 N.E.2d 212 (1982)); Pennsylvania (Coleco Industries, Inc. v. Berman, 423 F. Supp. 275
(E.D.Pa. 1976), affirmed in part, remanded in part,567 F.2d 569 (3d Cir. 1977), cert. denied, 439 U.S. 830,99 S.Ct. 106, 58 L.Ed.2d 124 (1978)); Rhode Island (Rusch Factors, Inc.v. Levin, 284 F. Supp. 85 (D.R.I. 1968)); Texas (ShatterproofGlass Corp. v. James, 466 S.W.2d 873 (Tex.Civ.App. 1971)); Utah (Christenson v. Commonwealth Land Title Insurance Co.,666 P.2d 302 (Utah 1983)); Virginia (Semida v. Rice,863 F.2d 1156 (4th Cir. 1988)); and Washington (TransAmerica TitleInsurance Co. v. Johnson, 103 Wn.2d 409, 693 P.2d 697
(1985)), have adopted Restatement (Second) of Torts § 552. Under this test, an accountant will be liable to third parties where two criteria are satisfied: First, the loss must be suffered "by the person or one of a limited group of persons for whose benefit and guidance [the accountant] intends to supply the information or knows that the recipient intends to supply it"; and second, the loss must be suffered "through reliance upon it in a transaction that [the accountant] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." Under this test, the accountant and the client agree between themselves as to who will be permitted to rely on the financial statements.
The United States Court of Appeals for the Eleventh Circuit certified the following question to the Georgia Supreme Court:
 "Can third parties recover against an accountant under Georgia law for the accountant's negligence in preparing audited financial statements where it was foreseeable that the third parties would rely upon the financial statements?"
257 Ga. at 132, 356 S.E.2d at 199. In response, the Georgia Supreme Court in Badische Corp. v.Caylor, supra, wrote:
 "In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach. If such cannot be shown there will be no liability in the absence of privity, wilfulness or physical harm or property damage. . . . [P]rofessional liability for negligence, including the liability of accountants, extends to those persons, or the limited class of *Page 394 
persons who the professional is actually aware will rely upon the information he prepared."
257 Ga. at 133, 356 S.E.2d at 200.
Florida (First Florida Bank, N.A. v. Max Mitchell Co.,541 So.2d 155 (Fla.Dist.Ct.App. 1989)); Arkansas (Robertson v.White, 633 F. Supp. 954 (W.D.Ark. 1986), and subsequent legislation: Ark. Code Ann. § 16-114-302 (Supp. 1987)); Nebraska (Citizens National Bank of Wisner v. Kennedy Coe,232 Neb. 477, 441 N.W.2d 180 (1989)); and Colorado (Stephens Industries,Inc. v. Haskins Sells, 438 F.2d 357 (10th Cir. 1971)), have adopted the rationale of the seminal case on the liability of accountants to third persons, Ultramares Corp. v. Touche,255 N.Y. 170, 174 N.E. 441 (1931), and have held that accountants are not liable in negligence to persons not in privity. The year before he was appointed to the United States Supreme Court to replace Justice Oliver Wendell Holmes, Benjamin N. Cardozo, as Chief Judge of the New York Court of Appeals and author of the leading case on foreseeability in the tort context (Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99
(1928)), refused to apply the test of foreseeability to the "circulation of a thought or words," as he described an accountant's audit in Ultramares. The policy considerations underlying Judge Cardozo's Ultramares opinion appear in his oft-quoted dicta:
 "If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class."
255 N.Y. at 179, 174 N.E. at 444.
The Court of Appeals of New York in Credit Alliance Corp. v.Arthur Andersen Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435,483 N.E.2d 110 (1985), extended Ultramares by utilizing another Cardozo opinion that preceded Ultramares, i.e., Glanzer v.Shepard, 233 N.Y. 236, 135 N.E. 275 (1922). In Glanzer, a weigher who was employed by a seller to weigh and certify the weight of beans and to provide a copy thereof to the buyer was successfully sued by the buyer in negligence for his inaccuracy in certifying the weight of the beans. In Ultramares, Judge Cardozo distinguished Glanzer on the ground that "the transmission of the certificate to another was not merely one possibility among many, but the 'end and aim of the transaction.' " 255 N.Y. at 182, 174 N.E. at 445. In merging the Glanzer and Ultramares opinions, the Court in CreditAlliance adopted the following standard:
 "Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties [were] intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance. While these criteria permit some flexibility in the application of the doctrine of privity to accountants' liability, they do not represent a departure from the principles articulated in Ultramares, Glanzer and White [White v. Guarente, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315
(1977)], but, rather, they are intended to preserve the wisdom and policy set forth therein."
65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118.
Credit Alliance represents current judicial thought in the highest court in New York (William Iselin Co. v. Landau,71 N.Y.2d 420, 527 N.Y.S.2d 176, 522 N.E.2d 21 (1988)) and was adopted by the Supreme Court of Idaho in a case of first impression in that state in April of this year (Idaho Bank Trust Co. v. First Bancorp of Idaho, 115 Idaho 1082,772 P.2d 720 (1989)). This standard was also adopted by the United States Court of Appeals for the Seventh Circuit, applying Indiana law, in Toro Co. v. Krouse, Kern Co., 827 F.2d 155
(7th Cir. 1987). *Page 395 
In Blumberg v. Touche Ross Co., 514 So.2d 922 (Ala. 1987), we found decisions of the highest court of New York persuasive on an issue of first impression regarding accountant liability. In the case at issue, we find persuasive the decision of this preeminent financial jurisdiction as to an accountant's liability to noncontractual parties and we adopt the standard enunciated in Credit Alliance, and previously set out herein, as the appropriate standard for determining whether an accountant owes a duty to noncontractual parties.
When there is no genuine issue of material fact as to any element of a cause of action and the defendant is entitled to a judgment as a matter of law, summary judgment for that defendant is proper. Rule 56(c), A.R.Civ.P. This case was filed prior to June 11, 1987; therefore, applying the Credit Alliance
standard, we must determine if there was a scintilla of evidence tending to show that Ridley and Jamison owed a duty to Colonial with respect to the accuracy of the financial statements, the breach of which could result in liability for negligence or wantonness. Ala. Code 1975, § 12-21-12. With Judge Cardozo's thoughts permeating this opinion, it is appropriate when writing of a "scintilla of evidence" to recall and reflect on the following prophecy of that learned Judge: "Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it."[2]
It is undisputed in the record that the annual financial statements in question were audited by Ridley and Jamison at Leedy's request only and that neither Ridley nor Jamison was requested to, or did, provide copies of the audits to anyone other than Leedy, although Leedy was provided with multiple copies of each year's audit. Furthermore, Colonial was only one of a number of Leedy's creditors listed on the financial statements, and the contacts that Ridley and Jamison had with Colonial were limited to certain standard bank confirmation inquiries, as part of their normal auditing procedures. Our review of the record simply fails to disclose any evidence tending to show that Ridley and Jamison must have been aware, at the time they audited the financial statements, that the audits were to be used by Leedy specifically to influence Colonial, or that Ridley and Jamison engaged in any conduct linking them to Colonial that evinces an understanding on their part that Colonial was to rely on the audits. We hold, therefore, that the duty owed by Ridley and Jamison to Leedy with respect to the examination of the financial statements, which arose by virtue of their respective employment contracts, did not extend to Colonial. Consequently, because liability for negligence and wantonness is predicated upon the existence of a duty, see Lynn Strickland Sales Service, Inc. v. Aero-LaneFabricators, Inc., 510 So.2d 142 (Ala. 1987), the trial court did not err in entering a summary judgment for Ridley and Jamison as to Colonial's claims alleging negligence and wantonness.
 2. Breach of Contract
Colonial's breach of contract claims are based on the employment contracts between Ridley and Leedy and Jamison and Leedy, as to which Colonial contends it is a third-party beneficiary. Colonial alleged that Ridley and Jamison breached their contracts with Leedy by failing to audit the financial statements properly for the fiscal years in question and that it was damaged as a result of that breach.
It is well established in this jurisdiction that one who seeks recovery in contract as a third-party beneficiary must establish that the contracting parties intended, at the time the contract was created, to bestow a direct, as opposed to an incidental, benefit upon him. Sheetz, Aiken Aiken, Inc. v.Spann, Hall, Ritchey, Inc., 512 So.2d 99 (Ala. 1987); Zeiglerv. Blount Bros. Constr. Co., 364 So.2d 1163 (Ala. 1978).
We have carefully reviewed the record in this case and we can find no evidence tending to show that the contracts *Page 396 
between Ridley and Leedy and Jamison and Leedy were mutually intended to bestow a direct benefit on Colonial. We note that the contracts do not refer to Colonial, which, as we have previously pointed out in our discussion of Colonial's negligence and wantonness claims, was only one of a number of Leedy's creditors. Also, as we have previously stated, there is no evidence tending to show that Ridley and Jamison must have been aware, at the time they audited the financial statements, that the statements were to be used by Leedy specifically to influence Colonial, or that Ridley and Jamison engaged in any conduct linking them to Colonial that evinces an understanding on their part that Colonial was to rely on the audits. The mere fact that Leedy gave Colonial copies of the audits during the course of their business transactions does not tend to prove that Ridley and Jamison ever understood that Colonial was to be a direct beneficiary of their contracts with Leedy. Summary judgment on the contract claim was proper.
 Fraud
There can be no actionable fraud without a breach of a legal duty owed by the defendant to the plaintiff. George v. FederalLand Bank of Jackson, 501 So.2d 432 (Ala. 1986).
There is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation; to those to whom he has a public duty created by statute or pursuant to a statute; and to those members of a group or class that the defendant has special reason to expect to be influenced by the representation. W. Prosser, Misrepresentation and ThirdPersons, 19 Vand.L.Rev. 231, 254 (1966). Colonial was not in any of these relationships with Ridley or Jamison.
In auditing Leedy's financial statements, Ridley and Jamison had no purpose of reaching and influencing Colonial. Therefore, they are not liable to Colonial for any false representation that may have been made. W. Prosser, Misrepresentation andThird Persons, 19 Vand.L.Rev. at 255.
 Jamison's Appeal
Our review of the record indicates that the trial court did not err in dismissing Jamison's counterclaim alleging negligence, fraud, and conspiracy to defraud. Jamison alleged that it was entitled to recover damages under its negligence and fraud claims up to the amount of Colonial's recovery, if any, from it. With regard to its fraud claims, Jamison also sought an award of punitive damages. Because summary judgment for Jamison was proper, it was not entitled to a recoupment of damages. Therefore, the negligence claim, and the compensatory damages claim under the fraud theories were due to be dismissed. Furthermore, Jamison used little more than generalized or conclusory statements in its counterclaim to set out the fraud complained of. Because the fraud claims were not pleaded with the particularity required by Rule 9(b), Ala.R.Civ.P., Jamison's claims for punitive damages were also properly dismissed. See VanLoock v. Curran, 489 So.2d 525 (Ala. 1986); Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala. 1981).
88-928 AFFIRMED.
88-970 AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Colonial alleged in one count of its complaint that Ridley and Jamison were liable to it under a theory characterized as "breach of financial warranties." However, after a careful reading of the complaint, it appears to us that this count is really nothing more than a restatement of Colonial's fraud claim (i.e., that Ridley and Jamison misstated Leedy's financial condition).
[2] Berkey v. Third Ave. Ry., 244 N.Y. 84, 94-95, 155 N.E. 58, 61, 50 A.L.R. 599, 604-05 (1926), reargument denied, 244 N.Y. 602,155 N.E. 914, 50 A.L.R. 599 (1927).