639 So.2d 504 (1994)
Samuel H. BOYKIN, Jr., and Apon, Inc.
v.
ARTHUR ANDERSEN & COMPANY, et al.
1920683.
Supreme Court of Alabama.
February 25, 1994.
As Modified on Denial of Rehearing April 8, 1994.
*506 Andrew P. Campbell and Shawn Hill Crook of Leitman, Siegel, Payne & Campbell, P.C., Birmingham, for appellants.
Asa Rountree, James L. Goyer III and Jeffrey R. McLaughlin of Maynard, Cooper & Gale, P.C., Birmingham, for Arthur Andersen & Co.
Hobart A. McWhorter, Jr. of Bradley, Arant, Rose & White, Birmingham, for Jack H. Shannon.
Samuel H. Franklin and S. Douglas Wiliams, Jr. of Lighfoot, Franklin, White & Lucas, Birmingham, for William L. Watson III, B.K. Goodwin III, Edwin I. Gardner and C. Whit Walter.
Jack Drake, Tuscaloosa, and Bruce J. McKee of Hare, Wynn, Newell and Newton, Birmingham, for amicus curiae Alabama Trial Lawyers Ass'n.
Robert M. Girardeau and Nancy S. Akel of Huie, Fernambucq & Stewart, Birmingham, for amicus curiae Alabama Society of Certified Public Accountants.
Henry E. Simpson of Lange, Simpson, Robinson & Somerville, Birmingham, for amici curiae AmSouth Bancorporation, Compass Bancshares, Inc., Energen Corp., First Alabama Bancshares, Inc., Protective Life Corp. and SouthTrust Corp.
SHORES, Justice.
This case involves claims of fraud, conspiracy, professional negligence, and breach of fiduciary duty, brought by two stockholders of Secor Bank against four former officers or directors of Secor Bank, one current but inactive director of Secor Bank, and the independent certified public accountants for Secor Bank. The damages claimed are based on the purchase, retention, and/or sale of stock with a fair market value substantially less than that represented by the defendants, and on the diminution of the value of the plaintiffs' stock. The claims asserted by the plaintiffs are asserted on their own behalf and not derivatively on behalf of the corporation. Secor Bank is not a party.
Samuel H. Boykin, Jr., and Apon, Inc., the plaintiffs, are shareholders in Secor Bank and have been since before 1988. They allege that defendants Jack H. Shannon, B. K. Goodwin III, William L. Watson III, Edwin I. Gardner, and C. Whit Walter (hereinafter collectively referred to as "the individual defendants"); Arthur Andersen & Company; and other fictitious parties who were directors, officers, employees, representatives, or agents of Secor Bank, deliberately entered into a scheme to defraud the stockholders of the bank by misrepresenting its true financial condition. Boykin and Apon claim that the defendants, acting in concert, mismanaged the bank and refused to disclose material liabilities, particularly a pending lender liability action brought by Cahaba Land Associates, Inc., in July 1988 against the bank,[1] *507 and failed to disclose three years of losses resulting from millions of dollars of bad commercial loans. They claim that the defendants knew the true financial condition of Secor and yet failed to mention material losses or liabilities on three years of annual reports. Of the individual defendants, only William L. Watson is still associated with Secor Bank, and he is a director on inactive status.
The trial court granted the defendants' Rule 12(b)(6), Ala.R.Civ.P., motion to dismiss for failure to state a claim upon which relief can be granted. The court said that Boykin and Apon's claims against the individual defendants were derivative in nature, and, therefore, that the plaintiffs lacked procedural standing because they had failed to make a demand upon the board of directors in compliance with Rule 23.1, Ala.R.Civ.P. With regard to Boykin and Apon's claims against defendant Arthur Andersen, the trial court held that the plaintiffs' claims failed to meet the "Credit Alliance standard" for accountant's liability adopted by this Court in Colonial Bank of Alabama v. Ridley & Schweigert, 551 So.2d 390, 394-95 (Ala.1989). See Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 483 N.E.2d 110, 493 N.Y.S.2d 435, order amended by 66 N.Y.2d 812, 489 N.E.2d 249, 498 N.Y.S.2d 362 (1985).
The issue before us is whether the trial court erred in entering the Rule 12(b)(6) dismissal on the holding that no remedy exists for individual shareholders' claims of fraud, breach of fiduciary duty, negligence, and conspiracy to defraud where an accounting firm and a corporation's officers and directors failed to disclose material liabilities to the shareholders.
We hold that the trial court erred in granting the motion to dismiss. On a Rule 12(b)(6) motion to dismiss, the burden is initially on the movant to show that the plaintiff's complaint fails to state a claim upon which relief can be granted. Fontenot v. Bramlett, 470 So.2d 669, 674 (Ala.1985); see Moore v. Liberty Nat'l Life Ins. Co., 581 So.2d 833, 834 (Ala.1991). A dismissal pursuant to Rule 12(b)(6) for failure to state a claim should seldom be granted. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Williams v. Kasal, 429 So.2d 1008, 1009 (Ala. 1983). The standard of review applicable to Rule 12(b)(6) dismissals is set forth in Seals v. City of Columbia, 575 So.2d 1061 (Ala. 1991):
"`It is a well-established principle of law in this state that a complaint, like all other pleadings, should be liberally construed, Rule 8(f), Ala.R.Civ.P., and that a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief. Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala.1979). Stated another way, if under a provable set of facts, upon any cognizable theory of law, a complaint states a claim upon which relief could be granted, the complaint should not be dismissed, Childs v. Mississippi Valley Title Insurance Co., 359 So.2d 1146 (Ala.1978).
"`Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981). In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Karagan v. City of Mobile, 420 So.2d 57 (Ala.1982).'"
575 So.2d at 1063, quoting from Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985). (Emphasis in original.)
The trial court's rationale for dismissing the claims against the individual defendants was that the plaintiffs had failed to make a demand on the board of directors pursuant to Rule 23.1, Ala.R.Civ.P. The individual defendants would have us affirm the dismissal of the claims against them for failure to state a claim upon which relief can be granted, on the grounds that the only harm suffered by the plaintiffs is the diminution in value of *508 their corporate stock, and that that harm is not a personal harm, but a harm to the corporation. The accountants argue that the plaintiffs' claim must be rejected, because, they say, the plaintiffs do not allege an injury to them as individuals for which the law provides a remedy and because, they say, that the only remedy the law provides is a derivative action on behalf of the corporation.
We disagree. Neither Rule 23.1 nor any other provision of Alabama law requires that stockholders' causes of action that involve the conduct of officers, directors, agents, and employees be brought only in a derivative action. Moreover, demand may be excused in a derivative action if a demand would be futile. Elgin v. Alfa Corp., 598 So.2d 807, 814 (Ala.1992). However, the plaintiffs' claims asserted here against Arthur Andersen and the individual defendants, former officers and directors of Secor Bank, are not derivative in nature. They do not seek compensation for injury to the bank as a result of negligence or mismanagement. The plaintiffs' claims allege fraud, intentional misrepresentations and omissions of material facts, suppression, conspiracy to defraud, and breach of fiduciary duty. The plaintiffs have asserted that they relied to their detriment on inaccurate financial reports certified by Arthur Andersen; that Arthur Andersen was aware that the annual reports of Secor Bank upon which they placed their certification were to be specifically directed and addressed to the shareholders of the bank; and that the purpose for disseminating the annual reports was to communicate to them, as shareholders, the financial condition of the corporation.
As we stated earlier, the burden was on the movants, on their Rule 12(b)(6) motion to dismiss, to show initially that the plaintiffs could prove no set of facts entitling them to relief. Fontenot, supra. Therefore, in regard to the Rule 12(b)(6) motion as to the claims against the individual defendants, the onus was on the defendants to show that all claims made by the plaintiffs were derivative in nature. We conclude that the plaintiffs' claims are not derivative in nature, and are claims upon which relief can be granted. Therefore, we reverse the trial court's judgment as to the individual defendants.
The trial court's rationale for dismissing the claims against the accountants was that the test for holding accountants liable for professional negligence in this state includes a "near-privity" requirement, which it says the plaintiffs failed to meet. We believe, however, that the plaintiffs alleged conduct on the part of the accountants that evidences that the accountants understood the shareholders' reliance. They aver that Arthur Andersen certified the 1988, 1989, and 1990 annual reports of Secor Bank in spite of direct knowledge that the bank had serious and material liabilities that were not stated on the reports. We conclude that this averment states a claim upon which relief can be granted; see Colonial Bank of Alabama v. Ridley & Schweigert, 551 So.2d 390 (Ala. 1989), and McLaughlin v. Pannell Kerr Forster, 589 So.2d 143 (Ala.1991).
Alabama law as to the professional liability of accountants was first set forth in Colonial Bank, supra, in which we adopted the standards set forth in Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 483 N.E.2d 110, 493 N.Y.S.2d 435, order amended by 66 N.Y.2d 812, 489 N.E.2d 249, 498 N.Y.S.2d 362 (1985):
"`Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties [were] intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance. While these criteria permit some flexibility in the application of the doctrine of privity to accountants' liability, they do not represent a departure from the principles articulated in [Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922), and White v. Guarente, 43 N.Y.2d *509 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977)], but, rather, they are intended to preserve the wisdom and policy set forth therein.'"
551 So.2d at 394, quoting Credit Alliance Corp., 65 N.Y.2d at 551, 483 N.E.2d at 118, 493 N.Y.S.2d at 443. Colonial Bank was followed by McLaughlin, in which we noted: "[I]t is conceivable that the defendants owed the plaintiffs a duty not to make false representations, inasmuch as the plaintiffs were `members of a group or class [stockholders] that the [defendants had] special reason to expect to be influenced by' the defendants' representations. See Colonial Bank of Alabama v. Ridley & Schweigert, 551 So.2d 390, 396 (Ala.1989)." McLaughlin, 589 So.2d at 144 n. 3.
Under the test set forth in Credit Alliance and adopted in Colonial Bank, these plaintiffs have stated a claim upon which relief can be granted against the accountants, and, thus, the trial court erred in granting the motion to dismiss as to the accountants. Under standards (1) and (2) set out in Credit Alliance quoted above, "the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes" and "in the furtherance of which [purpose or purposes] a known party or parties [were] intended to rely." Colonial Bank, 551 So.2d at 394. Here Arthur Andersen was aware that the annual reports it was certifying were specifically directed to the shareholders of the bank and that they were to be relied upon by the shareholders as stating the true and correct financial status and condition of the bank. The purpose of having an accounting firm certify a financial statement and annual report is to provide independent certification of the truth of these financial reports for those who must rely upon the reports.
The trial court held that standard (3) of the Credit Alliance testthat "there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance"was not satisfied in this case. The trial court interpreted this language as being a "near-privity" requirement and to mean that unless Arthur Andersen had direct, actual knowledge that plaintiffs Boykin and Apon were relying upon its opinion, Arthur Andersen cannot be held liable to the plaintiffs under Alabama law. This is a misreading of Colonial Bank, which does not refer to the accountants' knowledge of reliance on the part of a single, particular individual. Colonial Bank does not require that the accountants have actual knowledge of the identity and particular reliance of the specific individual who later seeks to hold the accountants liable for negligence or fraud. Colonial Bank and Credit Alliance refer to reliance by the "members of a group or class that the [defendants had] special reason to expect to be influenced by" the defendants' representations. Colonial Bank, 551 So.2d at 396. There must be simply some conduct on the part of the accountants that evidences the accountants' understanding that their opinion will be relied upon by a reasonably foreseeable and limited class of persons.
In this case, the stockholders who received the certified annual reports were members of a group or class that Arthur Andersen had "special reason to expect to be influenced by" its certification. Arthur Andersen knew and understood that the annual reports it was certifying were directed to the stockholders of Secor Bank and that those stockholders would rely upon the information contained in those annual reports in making investment decisions.
When we released our opinion in Colonial Bank, we noted that 17 states had adopted the rule of the Restatement (Second) of Torts § 552 (1977) as to the professional liability of accountants.[2]Colonial Bank, 551 So.2d at 393. Since that time, Nebraska, Florida, West Virginia, Louisiana, and Tennessee have also adopted the rule of § 552. It is time that Alabama move forward to join these jurisdictions and adopt, for determining the professional liability of accountants, the standard set forth in Restatement (Second) of Torts § 552 (1977):

*510 "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."
The Restatement rule limits accountants' liability to specifically foreseen and limited groups of third parties for whose benefit and guidance the accounting firm supplied the financial information and who used it as the accounting firm intended it to be used.
We are persuaded by the reasoning of the Fifth Circuit Court of Appeals in First National Bank of Commerce v. Monco Agency, Inc., 911 F.2d 1053 (5th Cir.1990), which recognized that the Restatement standard is not far afield from the three-pronged test of Credit Alliance. The real difference is that the Restatement clarifies any confusion as to the question of the privity necessary for the third prong. The Fifth Circuit reasoned as follows:
"The Restatement represents the moderate view, allowing only a restricted group of third parties to recover for pecuniary losses attributable to inaccurate financial statements. Significantly, the accountants retain control over their liability exposure. The restricted group includes third parties whom the accountants intend to influence and those whom the accountants know their clients intend to influence. Accordingly, liability is fixed by the accountants' particular knowledge at the moment the audit is published, not by the foreseeable path of harm envisioned by jurists years following an unfortunate business decision.
"However, the Restatement is more generous than New York's `near privity' rule since section 552 does not require that the accountants manifest conduct underscoring their understanding of a particular non-client's reliance upon the work product. The near-privity rule, in other words, requires that the precise identity of the informational consumer be foreseen by the auditors; however, the Restatement contemplates identification of a narrow group, not necessarily the specific membership within that group."
First National Bank of Commerce, 911 F.2d at 1059. (Emphasis original.) The Fifth Circuit went on to say:
"[T]he Restatement adopts the cautious position that an accountant may be liable to a third party with whom the accountant is not in privity, but not every reasonably foreseeable consumer of financial information may recover."
Id. at 1060.
The adoption of the Restatement rule for the professional liability of accountants should clarify the confusion exhibited by the trial court in this case as to the privity required by the third prong of the Credit Alliance test. Further, the rule of the Restatement embodies the reasoning of this Court as set forth in Colonial Bank and McLaughlin. Basic principles of justice require that an accounting firm be held liable for its intentional or negligent dissemination of inaccurate financial reports to specifically foreseen and limited groups of third parties for whose benefit and guidance the accounting firm supplied the information.
The plaintiffs have stated a cause of action against the individual defendants upon which *511 relief can be granted, and they have also stated a cause of action against the defendant accounting firm, under our holding in Colonial Bank and under the rule of Restatement (Second) of Torts § 552. Therefore, the judgment of dismissal is due to be reversed and this cause remanded for an adjudication on the merits.
REVERSED AND REMANDED.
HORNSBY, C.J., and KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
I believe that the trial court correctly held that Boykin and Apon lacked standing to file a direct action against the defendants, because the acts and omissions complained of provided a cause of action on the part of the corporation and could, therefore, be asserted only derivatively on behalf of the corporation and not by individual shareholders as was done in the complaint.
This Court has held that "[i]t is only when a stockholder alleges that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs do not affect other stockholders, that one can maintain a direct action in his individual name." Green v. Bradley Construction, Inc., 431 So.2d 1226, 1229 (Ala.1983). Consequently, "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right." Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981). Boykin and Apon's alleged harm is the diminution in the value of their stock in the corporation; this harm is not unique to them. This alleged harm is equally suffered by all other shareholders. In fact, Boykin and Apon included in their amended complaint claims on behalf of all shareholders in a class action. Therefore, these claims are not properly brought by these plaintiffs acting in an individual capacity.
Boykin and Apon cite no cases, Alabama or otherwise, holding that individual shareholders may sue on their own behalf for a diminution in the value of their stock caused by a breach of fiduciary duties by corporate officers and directors. In Shelton v. Thompson, 544 So.2d 845, 846-47 (Ala.1989), this Court affirmed the summary judgment on claims alleging breach of fiduciary duties by officers and directors of a corporation brought by the plaintiff stockholders in their individual capacity. Other jurisdictions have also rejected direct shareholder actions alleging breach of fiduciary duties against corporate officers and directors. See, e.g., Friedman v. Mohasco Corp., 929 F.2d 77, 79 (2d Cir.1991) (affirming the dismissal of shareholders' breach of fiduciary duty claims and stating that "these claims could only be be asserted derivatively on behalf of the corporation"); Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 744-45 (5th Cir. 1989) (dismissing a shareholder action under Texas law, holding that the corporation, not the shareholders, had standing to sue on the breach of fiduciary duty claim); Nowling v. Aero Services Int'l, Inc., 752 F.Supp. 1304, 1314-15 (E.D.La.1990) (stating that "an injury to corporate stock burdens all shareholders indiscriminately and thus an individual shareholder has no standing to make the claim" and that "an action to recover from an officer or director for a breach of fiduciary duty is secondary and must be asserted through a shareholder's derivative suit"); Hoffman v. Optima Systems, Inc., 683 F.Supp. 865, 872 (D.Mass.1988) ("[The shareholder's] cause of actioncorporate mismanagement and breach of fiduciary dutyis a corporate cause of action belonging to [the corporation]. [The shareholder] has not brought this action in a representative capacity or on behalf of [the corporation]. Accordingly, [the shareholder] lacks standing to sue for corporate mismanagement...."); Gabrielsen v. BancTexas Group, Inc., 675 F.Supp. 367, 372 (N.D.Tex.1987) (dismissing a breach of fiduciary duty claim by shareholders against directors because "plaintiffs do not have standing to assert such claims because the claims belong to the corporation... and may only be asserted by a shareholder in a derivative action"); Enterra Corp. v. SGS Associates, 600 F.Supp. 678, 689 (E.D.Pa.1985) ("An alleged breach of fiduciary duty on the part of the directors *512 which is asserted on behalf of all shareholders or the entire corporation ... must be maintained as a derivative action and cannot be asserted by individual shareholders in their own right."). The law is clear that there is no cause of action for claims of breach of fiduciary duty against officers and directors by shareholders in their individual capacity, and the trial court correctly dismissed these claims.
Boykin and Apon are alleging the same harm that was alleged and rejected in McLaughlin v. Pannel Kerr Forster, 589 So.2d 143 (Ala.1991), a case that affirmed a summary judgment on personal claims brought by corporate stockholders against an accounting firm that had worked for the corporation, specifically claims that "the defendants' actions with respect to the corporations had resulted in the corporations' losing the use of certain funds." McLaughlin, 589 So.2d at 144 n. 3. See also, Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981) ("diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right"). Boykin and Apon's claims must likewise be rejected because these plaintiffs do not allege an injury to them as individuals for which the law provides a remedy. The remedy the law provides for the type of harm suffered by the plaintiffs is a derivative action on behalf of the corporation. Boykin and Apon did not seek to maintain a derivative action, nor did they make a demand upon the board of directors or allege the futility of such a demand, so as to comply with the provisions of Rule 23.1, Ala.R.Civ.P. See Shelton v. Thompson, 544 So.2d 845, 849-51 (Ala.1989) (discussing the development of, and the philosophy behind, the Rule 23.1 derivative action). Therefore, the dismissal by the trial court was proper on the grounds that the plaintiffs alleged a corporate injury or harm rather than an individual injury or harm. See McLaughlin, 589 So.2d at 144 n. 3 ("the plaintiffs did not allege that any wrong had been done to them personally").
On this appeal, we were asked to reconsider our decision in Colonial Bank v. Ridley & Schweigert, 551 So.2d 390 (Ala.1989), to adopt the Credit Alliance standard for accountants' professional liability and to adopt in the place of that standard the rule set forth in Restatement (Second) of Torts § 552 (1977).[3] In Colonial Bank, the Court carefully considered the different standards for accountants' liability and concluded that the New York view, or Credit Alliance standard, was the more reasonable approach to adopt. Although I did not participate in Colonial Bank, it appears to me that the reasoning and conclusion there reached were sound. I think that the decision in this case will be construed as overruling, at least in part, the Colonial Bank decision and that the majority has not stated sufficient legal bases for doing so.
Based on the foregoing, I would affirm the trial court's dismissal under Rule 12(b)(6), Ala.R.Civ.P., for failure to state a claim upon which relief can be granted. I also would not overrule Colonial Bank v. Ridley & Schweigert, 551 So.2d 390 (Ala.1989), which was so recently decided by this Court. I therefore dissent from the majority's opinion.
HOUSTON, Justice (dissenting).
Did the stockholders have standing as individuals to bring this action? If they did not, then the Rule 12(b), A.R.Civ.P., motion was properly granted. If they did have standing, then it was error to grant the Rule 12(b) motion, even if Colonial Bank v. Ridley & Schweigert, 551 So.2d 390 (Ala.1989), remains the law of Alabama in regard to accountant liability for professional negligence.
The plaintiffs did not have standing as individuals to bring this action. See Green v. Bradley Construction, Inc., 431 So.2d 1226 (Ala.1983); Stevens v. Lowder, 643 F.2d 1078 (5th Cir.1981); Bruno v. Southeastern Services, Inc., 385 So.2d 620 (Miss.1980); H. A. Wood, Annotation, Stockholder's Right to Maintain (Personal) Action Against Third Person as Affected by Corporation's Right of Action for the Same Wrong, 167 A.L.R. 279, 280 (1947); E. H. Schopler, Stockholder's Action as Remedy to Recover Damages for Violation of Anti-trust Laws, 36 A.L.R.2d 1345, 1351-52 (1954); 19 Am.Jur.2d Corporations, *513 §§ 2245-46 (1986); 18 C.J.S. Corporations § 398 (1990). Therefore, the trial court did not err in granting Arthur Andersen & Company's Rule 12(b) motion to dismiss.
NOTES
[1] The $3.3 million judgment rendered in that action against Secor Bank was vacated by this Court on April 16, 1993. Cahaba Land Associates, Inc. v. Secor Bank, Federal Savings Bank, 619 So.2d 1372 (Ala.1993).
[2] Alaska, Georgia, Hawaii, Iowa, Kentucky, Michigan, Minnesota, Missouri, New Hampshire, North Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Utah, Virginia, and Washington.
[3] Amicus curiae brief filed by Alabama Trial Lawyers Association.