MURDOCK, Justice
(concurring in the result).
I concur in the result reached by the main opinion in each of these consolidated cases.
As a preliminary matter, I wish to note that the issue of “standing” referenced in *248 the main opinion with respect to case no. 1091610 is the issue of so-called “procedural standing” referenced in Boykin v. Arthur Andersen & Co., 639 So.2d 504, 507 (Ala.1994), and Shelton v. Thompson, 544 So.2d 845, 849, 852 (Ala.1989); it relates to whether a plaintiff has met the procedural prerequisite of making a demand on management to assert a claim on behalf of a corporation, Shelton, 544 So.2d at 849-52. It is an issue that goes to the cognizability under Alabama law of a claim when the plaintiff has not first made the requisite demand upon corporate management to pursue the matter, not whether the plaintiffs have experienced an actual, concrete injury of the nature intended when courts speak of “standing” in the sense of what is necessary for a constitutionally sufficient “case or controversy” and, in turn, subject-matter jurisdiction. See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[6]
Of more substantive concern is the fact that the Court today, in pursuing the legitimate need to limit the reach of this Court’s opinion in Boykin, chooses to overrule Boykin in its entirety, rather than only to the extent that it speaks to the specific type of circumstances presented in the case before us. Concomitantly, I am concerned by the analysis by which this Court reaches its decision today to overrule Boykin and, in turn, to reverse the judgment of the trial court. As to the analysis, I am concerned that the choice of certain language in Green v. Bradley Construction, Inc., 431 So.2d 1226 (Ala.1983), has set both the dissenting opinion of Justice Maddox in Boykin and the main opinion in the present case, which relies upon both Green and Justice Maddox’s dissent in Boykin, upon an incorrect analytical path of considering “direct claims” by shareholders as possible only when the losses complained of are not suffered by other shareholders.
As to the former concern, I first note that the main opinion in Boykin tells us merely that the damages claimed in that case were “based on the purchase, retention, and/or sale” of stock. 639 So.2d at 506 (emphasis added). It is unclear from this passage whether the claim in that case was anything other than one made by “retaining” shareholders for alleged losses caused by the failure of management to disclose mismanagement of the corporation at issue.
It may further be noted, however, that the dissenting opinion of Justice Maddox, upon which the majority relies today, apparently considered Boykin to be a case in which the plaintiffs merely sought to recover “for diminution in the value of their stock caused by a breach of fiduciary duties by corporate officers and directors.” 639 So.2d at 511 (emphasis added).[7] Such *249 a loss would in fact be a loss that is merely “incident to” the plaintiffs capacity as an existing shareholder. Consistent with Justice Maddox’s description of the case before him, I note that other cases compared by the main opinion to Boykin are cases in which the gravamen of the claims pursued by the plaintiffs was a breach of fiduciary duty to the shareholders of the corporation, as existing shareholders, not as purchasers or sellers of the stock who have acted to buy or sell stock in reliance on a fraudulent misrepresentation or suppression. See 76 So.3d at 237-47.
The present case involves only a retention of stock, specifically a retention of stock by preexisting shareholders who retained their stock in reliance upon what they say was a fraudulent suppression by management of material information, which suppression allegedly resulted in an artificially high price for the stock of which the shareholders chose not to take advantage. Today’s case does not involve a purchase or sale of securities in reliance upon a fraudulent misrepresentation or suppression. Consequently, to decide the present case, I do not see it necessary to overrule Boykin except to the extent Boy-kin holds that shareholders retaining their stock under such circumstances as described above have a direct action against those in management responsible for the suppression. That is, it is not necessary to overrule Boykin to the extent it stands for the proposition that shareholders who actually sell or purchase securities in reliance upon fraudulent representations or suppression directed to them have no “direct action” for their injuries.
Moreover, in conjunction with overruling Boykin in its entirety, even to the extent Boykin stands for the proposition that a purchase or sale of securities made in reliance upon a fraudulent representation or suppression may be brought as a direct action, the main opinion employs the following statement from this Court’s opinion in Green v. Bradley Construction, Inc., 431 So.2d 1226, 1229 (Ala.1983) (emphasis added): “ ‘It is only when a stockholder alleges that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs do not affect other stockholders, that one can maintain a direct action in his individual name.’ ” 76 So.3d at 240 and 241 (quoting Green, 431 So.2d at 1229, and Justice Maddox’s dissent in Boykin, 639 So.2d at 511, which likewise invoked the quoted passage from Green). As I indicate at the outset of this writing, I am concerned that in so doing this Court draws too much from the use of the term “fraud” and, as a result, indicates with its analysis today that even a fraudulent representation or suppression that is directed to a shareholder and that results in a sale or purchase of a security is not directly actionable if the shareholder possesses his or claim in common with other shareholders.
The gravamen of so-called “direct claims” is misconduct directed at shareholders, causing each of them to act or to fail to act to their individual detriment, rather than misconduct (such as waste or conversion of corporate assets, or intentional mismanagement) that simply lessens the value of the corporation as an entity. Conceptually, it is only misconduct and injury of the latter variety that makes for a claim in the corporation against members of its own management. The issue is whether the wrong is one committed against stockholders as individuals or *250 against the corporation as an entity,[8] not how many of the corporation’s stockholders the wrong is committed against.
A close look at Green reveals that, unlike the claim in the present case, the claim filed in Green was in fact a derivative claim, and that the only issue in that case was simply whether Alabama law prevented the plaintiff from filing this derivative claim because he was not a stockholder at the time he filed his action. That, of course, is not the issue in the present case. Further, because of the nature of the issue presented in Green, it may be argued that the quoted passage relied upon in Boykin and in this case, addressing as it does what is required in order for a stockholder to be able to maintain a direct action, was dictum.
More importantly, it should be noted that, although the Court in Green referred to “fraud” upon the plaintiff, that case did not involve fraudulent representations or suppression; neither did it involve a purchase or sale of corporate stock in reliance upon the same. Instead, the “fraud” referenced in the above-quoted passage was that of an alleged “conversion” of the plaintiffs share of certain corporate assets, which the opinion spoke of as an event that worked a “fraud” on the shareholder-plaintiff. In other words, the complaint concerned alleged mismanagement, or a breach of fiduciary duty, as to the corporation itself. So understood, the quoted passage cannot fairly be read as limiting direct actions for actual fraudulent representations or suppressions directed to and relied upon by a selling or buying shareholder to only those cases where “such wrongs do not affect other stockholders”; it can be read only as limiting breach-of-fiduciary actions to such cases. I believe we overread Green if we read it as requiring a different conclusion merely by virtue of its use of the term “fraud,” by which I believe the Court was merely referring to an act of the defendants that wronged the plaintiff in a general sense.
The main opinion in the present case states at one juncture in its analysis, however, that “[ajlthough the plaintiffs have cast their claim for damages as a fraudulent-suppression claim, the actual harm— the diminution of their Altrust stock based on the actual state of affairs at the company — was caused by the alleged mismanagement” of Altrust by its officers and directors. 76 So.3d at 246 (emphasis added). To the extent this statement is consistent with the notion that claims in a case such as this must fail for a lack of causation, I agree. It is on this basis that I believe (a) that Boykin should in fact be overruled, but only to the extent it holds that a direct action may be premised upon a mere retention of stock in reliance upon a suppression that served only to create an *251 artificially high price for the stock of which the plaintiff fails to take advantage, and (b) that the main opinion reaches the right result in reversing the trial court’s judgment in ease no. 1091610 and case no. 1091620.
As the individual defendants note, “the plaintiffs theory of loss assumes [that] had the facts concerning mismanagement been disclosed, there would nonetheless have been the same opportunity to sell stock at $17.25 per share that existed when these facts were not known.... Logically, had the facts of the supposed mismanagement been disclosed [earlier and in a timely manner], the stock would have been valued at some lower price, not $17.25 per share.” The defendants contend, and I agree, that the plaintiffs cannot logically contend that the corporation, as a practical matter, could have, or would have, gone to its stockholders and told them of the facts indicating that their stock was worth less than $17.25 per share, but offer to buy their stock for $17.25 per share anyway. Put differently, the suppression did not cause any loss of value in the stock; rather, it caused only a temporary inflation in the price at which the stock could be sold (a price of which the plaintiffs chose not take advantage). The lower, true value of the plaintiffs’ stock that obtained before and after the pendency of the temporary offer was a function of the truth, not the fraudulent suppression. As it happens in this particular case, that “truth,” at least as alleged by the plaintiffs, is that the individual defendants intentionally mismanaged the corporation and breached their fiduciary duty. Accordingly, insofar as this particular case is concerned, I agree that the only viable claim under the circumstances presented here would have been a derivative claim on behalf of the corporation.
The decision of the United States Court of Appeals for the Eighth Circuit in Arent v. Distribution Sciences, Inc., 975 F.2d 1370 (8th Cir.1992), pertains to allegations sufficiently similar to those at issue here to be instructive:
“Plaintiffs were not harmed because they were unable to realize the true value of their stock — they were harmed because the true value of their stock was zero [or in this case, less than $17.25 per share]. ‘Diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right’. Flynn v. Merrick, 881 F.2d 446, 449 (7th Cir.1989).
“Plaintiffs argue that they would have sold their LAN stock had they known that the merger would not occur. But if everyone had known this adverse fact, then the stock’s value would have reflected the adversity. Only if plaintiffs were the only ones DSI told, so that they could have improperly traded on inside information in dealing with third party purchasers, would disclosure have aided their investment fortunes. Compare Crocker [v. FDIC], 826 F.2d [347], at 351-52 [(5th Cir.1987)].
“The Seventh Circuit made this point succinctly in Kagan [v. Edison Bros. Stores, Inc., 907 F.2d 690, 692 (1990)]: ‘The difficulty with [plaintiffs’] position is that the deceit is not coupled with the injury.’ 907 F.2d at 692. The injury in this case was caused not by DSI’s alleged non-disclosure, but by the demise of LAN. That is a derivative injury.”
975 F.2d at 1374.

. "[0]ur courts too often have fallen into the trap of treating as an issue of 'standing’ "— and therefore as an issue of subject-matter jurisdiction- — "that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action.” Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1219 (Ala.2010). Cf. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, Jurisdiction § 3531 (3d ed. 2008) ("The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms.”). "Subject-matter jurisdiction concerns a court's power to decide certain types of cases.” Ex parte Seymour, 946 So.2d 536, 538 (Ala.2006).

. Writing for the majority, Justice Shores insisted in Boykin that "the plaintiffs’ claims allege[d] fraud, intentional misrepresentations and omissions of material facts, suppression, [and] conspiracy to defraud," as well as breach of fiduciary duty. 639 So.2d at 508. These differing views of die nature of the claims presented are reconcilable if one reads *249 Justice Maddox’s dissenting opinion as describing what, as a practical matter, he considered to be the actual cause of the plaintiffs’ injuries. 639 So.2d at 511-12. Compare discussion of the present case, infra.

. "A derivative action has ... been defined as an action 'brought by one or more stockholders of a corporation to remedy or prevent a wrong against the corporation,’ while a direct action has been defined as an action ‘brought by one or a few shareholders to remedy or prevent a direct wrong to the plaintiffs.’ 19 Am.Jur.2d Corporations § 1934 (2004) (emphasis added). See also, 19 Am.Jur.2d Corporations § 1944 (2004) (stating that a derivative action is brought to enforce 'a corporate right or to prevent or remedy a wrong to the corporation’).” Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 345 (Ala.2006). See also, e.g., Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. Unit B 1981) (explaining that a claim is a direct one, rather than a derivative one, "where the shareholder shows a violation of duty owed directly to him" and that "[e]very injury alleged [in that case] is an injury directly to the corporation. Plaintiffs' individual injury arises only from the loss in value of their stock as a result of injury to the corporation. Under these circumstances, plaintiffs have no independent cause of action.”).