822 A.2d 1272

Laurence PASKOWITZ

v.

Samuel J. WOHLSTADTER, et al.

No. 841, Sept. Term, 2002.

Court of Special Appeals of Maryland.

May 5, 2003.

2

Ronald B. Rubin (Michael A. Stodghill, Rubin & Rubin, Chartered, Rockville, Jeffrey M. Haber, Bernstein Liebhard & Lifshitz, LLP, New York City, on brief), for appellant.

Roger W. Titus (Samantha M. Williams, Venable, Baetjer and Howard, LLP, on brief), Rockville, for appellees Wohlstadter, Migausky and Massey.

Albert D. Brault (James M. Brault, Brault, Graham, Scott & Brault, LLC, on brief), Rockville, for appellee Igen.

(Stephen Sacks, Andrew T. Karron, Arnold & Porter, on brief), Washington, DC, for appellees.

Argued before DEBORAH S. EYLER, GREENE and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Montgomery County, Laurence Paskowitz, the appellant, filed a multi-count amended complaint against IGEN, a Delaware corporation with its principal place of business in Gaithersburg, Maryland, an appellee, and certain past and present officers and directors of IGEN ("the individual appellees").[1] Ultimately, the court dismissed all of Paskowitz's claims.

---

1. The individual appellees are: Samuel J. Wohlstadter, director, chairman of the board and chief executive officer of IGEN; George V.

**4**

In this appeal, Paskowitz challenges the court's dismissal of Count V of the amended complaint. He contends the circuit court was legally incorrect in ruling that the claim in Count V was derivative, not direct, and that he did not have standing to pursue a direct claim.[2] For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

IGEN is a biological technology company that was founded in 1982 and became publicly traded in 1994. It manufactures sophisticated biological detection systems using technology it patented under the name "ORIGEN."

In 1995, IGEN entered into a joint venture agreement with Meso Scale Technologies, LLC ("MST"), and formed a joint venture entity named "Meso Scale Diagnostics, LLC" ("the Joint Venture"). Paskowitz claims that the Joint Venture constituted a waste of corporate assets and self-dealing on the part of certain of the individual appellees who, together with some of their family members, used it to position themselves to profit financially at the expense of IGEN and its shareholders.

---

Migansky, Vice President of Finance, Chief Financial Officer, and Secretary; Richard J. Massey, Ph.D, President and director; Anthony Rees, director; Edward B. Lurrier, director; William J. O'Neill, director; Joop F. Sisterman, director; and Robert R. Saltsmans, director.

2. The precise questions presented by the appellant are:
 (1) Whether the trial court committed an error of law by dismissing Paskowitz's claim for breach of the duty of disclosure (Count V), regarding the allegedly false and misleading proxy statements?
 (2) Whether, in dismissing Paskowitz's disclosure claim (Count V), the court improperly characterized it as a derivative, rather than a direct,[sic] claim, notwithstanding (i) that the alleged false and misleading disclosures in the proxy statement impaired Paskowitz's contract right to vote his stock, (ii) where no corporate right was asserted, and (iii) where no relief was requested on behalf of the corporation?
 (3) Whether the trial court reached an erroneous legal conclusion that Paskowitz, to maintain his disclosure claim (Count V), must have a "particular specific interest" in the outcome of the director elections at issue by running for a seat on the company's board?

Paskowitz did not own IGEN stock when the Joint Venture was formed. He became a shareholder in IGEN two years later, in May 1997, upon purchasing 600 shares of stock. He alleges that he inadvertently sold those shares, in March 2000, and that a month later, when he realized what had happened, he repurchased another 600 shares of IGEN stock, in two lots.

Members of the IGEN board of directors hold staggered three-year terms. Every year, at its annual meeting, IGEN holds an election for those director positions with expiring terms. Proxy statements are issued to the shareholders in advance in connection with the elections.

At the IGEN annual meetings in 1997, 1998, and 1999, certain of the individual appellees were candidates for election to the board. IGEN circulated proxy statements to shareholders pertaining to those elections in September 1997, July 1998, and July 1999, respectively. The proxy statements related information about the Joint Venture. Paskowitz alleges that certain representations about the Joint Venture in the proxy statements were materially misleading partial disclosures.

On August 3, 2000, a creditor of IGEN made a demand on IGEN's board of directors, asserting that the Joint Venture amounted to corporate waste and self-dealing by certain of the individual appellees. The board responded by establishing a committee of independent directors to investigate the demand and recommend whatever measures it deemed appropriate. The independent committee and its mission were publicly disclosed.

In November 2000, before the independent committee concluded its investigation, another of IGEN's creditors, Brown Simpson Partners I, Ltd. ("Brown Simpson"), purchased 100 shares of IGEN stock and filed, in the Circuit Court for Montgomery County, a shareholder's derivative action naming the individual appellees and IGEN as defendants. Brown Simpson alleged, *inter alia*, that the Joint Venture constituted corporate waste and self-dealing on the part of the individual appellees.

On March 13, 2001, soon after Brown Simpson filed its suit, Paskowitz filed his original complaint in this case, also in the Circuit Court for Montgomery County and also naming the individual appellees and IGEN as defendants. Paskowitz's complaint stated four counts, each alleging what Paskowitz labeled a "derivative" claim, and copied almost word for word the Brown Simpson complaint. Because of their common subject matter, the two cases were specially assigned to the same judge and thereafter were handled in a consolidated fashion.

On August 14, 2001, Paskowitz filed an amended complaint, restating his "derivative" claims and adding what he designated as two "direct" claims against the individual appellees, in Counts V and VI, both personally and as a putative class representative.

In Count V, entitled *"Breach of Duty of Candor v. the Individual Defendant Directors,"* Paskowitz alleged that, in the course of and for the purpose of soliciting shareholder votes in the elections for directorships held at IGEN's annual meetings in 1997, 1998, and 1999, the individual appellees made materially false and misleading disclosures about the Joint Venture in its proxy statements; and by doing so, breached their fiduciary duty of candor to the shareholders. Paskowitz further alleged that by virtue of the breach, he "ha[d] been damaged" and that "IGEN would continue to be irreparably injured and damaged." He asserted that the individual appellees should be removed and replaced as directors and "[a] new election of directors should be held because, among other reasons, the [individual appellees] were elected pursuant to the [1997, 1998, and 1999 proxy statements]."

In Count VI, Paskowitz alleged that the material partial disclosures about the Joint Venture contained in the proxy statements had caused a dilution in the value of his IGEN stock.

By the time Paskowitz filed his amended complaint, motions to dismiss or for summary judgment by the individual appel-

lees and IGEN in his case and the Brown Simpson case already had been filed and were pending. On September 19, 2001, the individual appellees responded to Counts V and VI of the amended complaint by filing additional motions to dismiss or for summary judgment directed to those counts, on four grounds: 1) the claims in Counts V and VI were derivative, not direct, and for reasons argued in the pending motions on the derivative claims, failed to state causes of action for which relief could be granted; 2) the alleged misdisclosures were not material; 3) the claim for equitable relief was moot because the terms of the directors elected in 1997, 1998, and 1999 had expired; and 4) Paskowitz had not suffered any damages. Paskowitz filed an opposition to the individual appellees' motion.

In the meantime, the independent committee completed its investigation and issued a report concluding that the Joint Venture was for the most part beneficial to the corporation but recommending some changes to it. Soon thereafter, Brown Simpson added William Shaffer as a plaintiff. Shaffer had purchased stock in IGEN in 1995, before the Joint Venture was formed.

A central issue in the pending motions concerned two requirements, under Delaware law, that a plaintiff must meet to proceed with a derivative claim. First, the plaintiff must satisfy the "Continuous Ownership Rule." Under that rule, the plaintiff must have been a shareholder at the time of the corporate action that is the subject of his complaint. Del.Code Ann., Corporations, tit. 8 § 327 (2000). Neither Paskowitz nor Brown Simpson owned stock in IGEN when the Joint Venture was formed. Paskowitz owned stock in IGEN when the proxy statements were issued, but, as noted, before filing suit sold his stock—and then repurchased stock. Shaffer owned stock when the Joint Venture was formed and thereafter.

Second, the plaintiff must meet the "Demand Futility Rule." That rule requires the plaintiff to have made demand on the corporation's board of directors to take action, which the board then refused; or to be excused from making demand

because it would have been futile. Del. Ch. Ct. R. 23.1. *See also Grimes v. Donald,* 673 A.2d 1207, 1216 (Del.1996) (pointing to this rule as "a matter of substantive law embodied in the procedural requirements of Chancery Rule 23.1").

On December 18, 2001, the court held a consolidated hearing on pending motions in the Brown Simpson and Paskowitz cases. The court dismissed all of Brown Simpson's derivative claims and three of the four claims Paskowitz labeled derivative on the ground that they did not meet the Continuous Ownership Rule.

The court also dismissed Count V of the appellant's amended complaint. As noted, that ruling is the sole subject of this appeal. The court explained the basis for its ruling on Count V as follows:

> [T]he court finds as to count five that the claim which complains about having voted for bad directors is a derivative claim, not a direct claim. In an instance such as this where the plaintiff seeking to bring the action did not have a particular specific interest in the election and was not himself running for office, but rather complains about the governance of the board as it affects the corporation [the action is derivative under Delaware law].

Finally, the court dismissed the appellant's claim in Count VI, stating that because IGEN's stock price had risen since the appellant purchased his shares, he had not suffered compensatory damages.

Paskowitz filed a motion for reconsideration of the dismissal of Count V, which the individual appellees opposed. On March 7, 2002, the court held a hearing on all pending motions. On May 21, 2002, it issued a memorandum opinion and order dismissing the derivative claims of all the plaintiffs on one or more of the following grounds: limitations; failure to meet the Demand Futility Rule; and failure to state a viable claim for waste of corporate assets. The court also denied the appellant's motion to reconsider its ruling on Count V.

The appellant then noted this appeal. Neither Brown Simpson nor Shaffer took an appeal.

## DISCUSSION

The parties agree that Delaware law is controlling. Before stating their contentions, we shall review enough of the relevant general principles of Delaware corporate law to provide context.

A "derivative" action is a claim asserted by a shareholder plaintiff on behalf of the corporation to redress a wrong against the corporation. The defendant in a derivative action may be a corporate fiduciary, such as a director, who committed a wrong against the corporation. The action is "derivative" because it is brought for the benefit of the corporation, not for the shareholder plaintiff. *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 351 (Del.1988). For that reason, ordinarily, damages recovered in a derivative suit are paid to the corporation. *Id.*

By contrast, a "direct" action is a claim asserted by a shareholder, individually, against a corporate fiduciary, such as a director, to redress an injury personal to the shareholder. *Kramer, supra*, 546 A.2d at 351 (quoting R. Clark, *Corporate Law* 639–40 (1986)). Because damages recovered in a direct action are to remedy the shareholder plaintiff individually, they are payable to him, not to the corporation. Direct claims often are filed as class actions.

For a shareholder to assert a direct action against a corporate fiduciary, he must have been injured *"directly or independently"* of the corporation," *Kramer, supra*, 546 A.2d at 352 (emphasis in original) (citing *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (1970)), and "must allege more than an injury resulting from a wrong to the corporation." *Kramer, supra*, 546 A.2d at 351. The test to distinguish between derivative and direct harm is whether the plaintiff suffered a "special injury." *Lipton v. News International, Plc*, 514 A.2d 1075, 1078 (Del.1986). In *Moran v. Household International, Inc.*, 490 A.2d 1059, (Del.Ch.1985), *aff'd*, 500 A.2d 1346 (Del.1985),

the Delaware Chancery Court stated: "[T]he plaintiff [in a direct action] must allege either an injury which is 'separate and distinct from that suffered by other shareholders,' or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation." *Id.* at 1070 quoting 12b *Fletcher's Cyclopedia Corps.*, § 5921, p. 451 (Perm.Ed., Rev.Vol.(1984)). *See also In re Tri–Star Pictures, Inc., Litigation,* 634 A.2d 319, 330 (Del.1993).

Whether a claim is derivative or direct is not a function of the label the plaintiff gives it. *Moran v. Household International, supra,* 490 A.2d at 1069–70; *Elster v. American Airlines, Inc.,* 100 A.2d 219, 223 (Del.Ch.1953)(quoting *Selman v. Allen,* 121 N.Y.S.2d 142, 146 (1953)). Rather, the nature of the action is determined from the body of the complaint. *Moran v. Household International, supra,* 490 A.2d at 1070. It is a legal question, and frequently is not a simple one. " 'Although the tests have been articulated many times, it is often difficult to distinguish between a derivative and an individual action.' " *Grimes v. Donald, supra,* 673 A.2d at 1213 (quoting *In re Rexene Corp. Shareholders Litig.,* 17 Del. J. Corp. L. 342, 348, Fed. Sec. L. Rep. P 96010 (1991)). The facts alleged will not necessarily be determinative because sometimes a single set of facts will support a derivative action *and* a direct action. *Grimes, supra,* 673 A.2d at 1213. When a shareholder's complaint states a cause of action that is both direct and derivative, the shareholder may proceed with the direct action. *Elster v. American Airlines, Inc., supra,* 100 A.2d at 222.

Under Delaware corporate law, the members of the board of directors of a Delaware corporation are corporate fiduciaries who owe a triad of duties to the corporation's shareholders: the duties of care, loyalty, and good faith. *Skeen v. Jo–Ann Stores, Inc.,* 750 A.2d 1170, 1172 (Del.2000) (citing *Malone v. Brincat,* 722 A.2d 5, 10 (Del.1998)). These fiduciary duties give rise to certain disclosure obligations. *Malone v. Brincat, supra,* 722 A.2d at 11; *O'Reilly v. Trans-*

*world Healthcare, Inc.,* 745 A.2d 902 (Del.Ch.1999). Often, the obligation to disclose will arise in the context of a communication being made by the directors to the shareholders about stockholder action that is being considered or solicited.

In Count V, Paskowitz alleges that the individual appellees violated their disclosure obligations in the 1997, 1998, and 1999 proxy statements by making materially misleading partial disclosures about the Joint Venture. He contends that Count V states a direct claim because the disclosures were made in connection with the individual appellees' soliciting shareholder action, *i.e.,* votes in their director elections. He further argues the disclosure violations caused him to exercise his shareholder voting right in those elections in a state of misinformation, thus impairing his voting right, which is a special injury. His claim is direct, not derivative, he argues, because it is brought to redress the injury to his voting right, not to redress an injury to the corporation. Likewise, the special injury to his voting right gave him standing to pursue a direct claim, both individually and as a class member.

In addition, Paskowitz contends that the remedy he seeks supports the conclusion that his claim is direct, not derivative. He seeks injunctive relief in the form of corrective disclosures by the board of directors to the shareholders; and also seeks removal of the individual appellees who still are on the board. Paskowitz further contends that, because the disclosure violation affected his individual voting right he is entitled to *per se* nominal damages, and therefore has satisfied the damages element of a direct claim. He concedes he cannot prove actual damages.

The individual appellees respond that the claim in Count V is derivative, not direct, because Paskowitz has not alleged, and cannot allege, that he suffered a special injury, *i.e.,* an injury that is unique to him as opposed to having been experienced by all the IGEN shareholders, and he also cannot allege and prove that he suffered an injury to a personal contractual right as a stockholder, including an injury to his right to vote. They maintain that allegedly misleading partial

disclosures in a proxy statement soliciting shareholder votes for the election of directors is not an injury to the individual voting rights of the shareholders.

The individual appellees also argue that other legal grounds warranting dismissal of Count V that they raised in the circuit court, but were not addressed, compel the dismissal of that count as well. Specifically, they contend that the equitable and injunctive relief Paskowitz seeks is moot; that he is not entitled to *per se* nominal damages and in a direct action would have to prove actual damages, which he cannot do; and that the allegedly misleading partial disclosures were not material and would amount to "self flagellation," which, under Delaware law, corporate fiduciaries are not required to engage in. *See Loudon v. Archer–Daniels–Midland*, 700 A.2d 135, 143 (Del.1997) (observing that the "directors' duty of disclosure does not oblige them to characterize their conduct in such a way as to admit wrongdoing[,]" *i.e.*, to engage in "self-flagellation").

Paskowitz responds to the individual appellees' arguments by stating that the equitable relief he seeks is not moot, notwithstanding the three-year director terms, because some of the individual directors were re-elected in subsequent elections, and still hold director positions; corrective disclosures still could be made; he is entitled to *per se* nominal damages, so he is not without a viable damages claim; the materiality of the misleading partial disclosures was adequately pled; and the self-flagellation rule is not implicated.

 "The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 785, 614 A.2d 1021 (1992), *cert. denied*, 330 Md. 319, 624 A.2d 490 (1993) (citing *Bramble v. Thompson*, 264 Md. 518, 520, 287 A.2d 265 (1972)). This Court must determine whether the trial court was legally correct in dismissing the complaint. *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 555, 731 A.2d 957 (1999). "In reviewing a motion to dismiss for failure to state a claim under Maryland Rule 2–322(b)(2), [we]

must assume the truth of all well-pleaded, relevant, and material facts in the complaint and reasonable inferences that can be drawn therefrom." *Allied Inv. Corp. v. Jasen, supra,* 354 Md. at 555, 731 A.2d 957 (citing *Bobo v. State,* 346 Md. 706, 708, 697 A.2d 1371 (1997)). *See also Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993); *Odyniec v. Schneider,* 322 Md. 520, 525, 588 A.2d 786 (1991).

■ For the reasons we shall explain, we conclude that the circuit court properly dismissed Count V of the amended complaint.

The essence of Paskowitz's position on the derivative versus direct and related standing issues is that whenever a corporate fiduciary, such as a director, makes a materially misleading disclosure in connection with stockholder action, the disclosure violation impairs the voting rights of the shareholders; and the impairment of a shareholder's voting right is an individual, personal injury to that shareholder. While language in some of the Delaware cases supports this broad view of when there is an injury to the voting right of a shareholder that can be remedied by a direct action, the more recent pronouncements of the Delaware Supreme Court take a circumscribed view.

In *Loudon v. Archer–Daniels–Midland, Inc., supra,* 700 A.2d 135, a class of shareholders sued individual directors in the defendant corporation upon allegations that disclosures in a proxy statement for the 1995 annual meeting to elect directors were incomplete and materially misleading. At the outset of the opinion, the Court reviewed the principles that govern direct claims by shareholders for breach of director disclosure duties. It stated:

[T]he Delaware law of the fiduciary duties of directors, as developed in our judicial decisions, establishes a general duty of directors to disclose to stockholders all material information reasonably available when seeking stockholder action. Whether or not a failure to fulfill that duty will result in personal liability for damages against directors *depends upon the nature of the stockholder action that was*

*the object of the solicitation of stockholder votes* and the misstated or omitted disclosures in connection with that solicitation.

*Id.* at 137–38 (emphasis added).

■ As the quoted paragraph makes clear, the mere fact that a director breaches his duty to disclose material information when seeking stockholder action, *i.e.* votes, does not necessarily result in personal liability on the director's part. Thus, Paskowitz's premise, that any shareholder vote exercised based on proxy materials that are misleading constitutes an impairment of the shareholder's voting right, and therefore is a special injury under the language in *Moran*, is flawed. According to the Court in *Loudon*, whether the stockholder has suffered an injury depends on the nature of the stockholder action that was the object of the solicitation of votes.

*Loudon* also is important because the Court in its opinion limited its prior decision in *In re Tri–Star Pictures, Inc., Litigation, supra*, 634 A.2d 319, to its facts. Paskowitz places great reliance on broad language in the *Tri–Star* opinion stating that, whenever a misleading partial disclosure is made to shareholders in the course of soliciting votes, so that they exercise their votes in a state of misinformation, the shareholders have been injured, and are entitled to at least *per se* nominal damages. In that case, former minority shareholders of Tri–Star Pictures, Inc., brought suit challenging a "complicated and convoluted" business combination by which the Coca–Cola Company obtained 80% ownership in Tri–Star. *Id.* at 320. The business combination involved voting rights agreements that had the effect of diluting the voting rights of the minority shareholders.

In *Loudon*, the Court stated: "*Tri–Star* stands only for the narrow proposition that, where directors have breached their disclosure duties in a corporate transaction that has *in turn* caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages. *Tri–Star* should not be read to stand for any broader proposition." 700 A.2d at 142 (emphasis added). Later in the

opinion, on the issue of damages, the Court further limited *Tri–Star:* "We hold that under Delaware law there is no *per se* rule that would allow damages for all director breaches of the fiduciary duty of disclosure." 700 A.2d at 146–47.

One year later, the Delaware Chancery Court, in *In re the Walt Disney Company Derivative Litigation,* 731 A.2d 342 (Del.Ch.1998), *aff'd in part and rev'd in part on other grounds, sub nom. Brehm v. Eisner,* 746 A.2d 244 (Del.2000), explained the impact of the *Loudon* decision. The court explained that after *Tri–Star* was decided, it appeared that disclosure violations by directors would give rise to liability "whenever shareholder action was solicited." *Id.* at 371. The Delaware Supreme Court in *Loudon* had clarified, however, that "disclosure violations that negatively impact voting or economic rights" support a direct shareholder claim, and require proof of actual damages; disclosure violations that do not negatively impact voting or economic rights "may be dismissed for failure to state a claim." *Id.* at 371–72.

In the case at bar, Paskowitz did not, and could not, challenge any corporate decision or action approving the Joint Venture. The Joint Venture was entered into in 1995, and whatever stockholder or other corporate action adopting it was taken then. Paskowitz was not an IGEN stockholder at that time and for that and a host of other reasons he cannot level a direct challenge against the Joint Venture. The corporate action that is the basis for Paskowitz's legal challenge is the election of directors in 1997, 1998, and 1999. As explained, he claims that the allegedly materially misleading partial disclosures about the Joint Venture in the proxy statements soliciting votes for the individual appellees had an impact on the results of the elections.

We conclude that, under *Loudon,* Paskowitz's disclosure claim was not a direct claim. Even assuming the materiality of the allegedly misleading partial disclosures about the Joint Venture in the proxy materials, and that his vote was based on the allegedly misleading partial disclosures, the transactions the shareholders were voting on—the elections of directors—

did not affect the shareholders' voting (or other contractual) rights. Unlike the shareholder action in *Tri–Star*, which was a vote on a business combination that if adopted would dilute the voting rights of certain shareholders, the director elections in this case had no impact on shareholder voting rights. As the circuit court observed, the director elections concerned corporate governance. They did not implicate the individual voting rights of the shareholders. Paskowitz did not allege, and cannot allege, a special injury.

In addition, and relatedly, under *Loudon*, the equitable and injunctive relief Paskowitz was seeking had become moot, and he could not properly plead (or prove) damages necessary to support a direct action. In *Loudon*, the Court observed:

A timely complaint, properly pleaded and supported by proof sufficient to invoke preliminary equitable relief, could result in an early injunction or the imposition of corrective disclosures before the complained-of corporate activity had been consummated. There may also be a potential damage remedy where the misstatement or omission implicates the stockholders' economic or voting rights. But there is no *per se* doctrine imposing damage liability on directors in a disclosure case absent these elements.

*Id.* at 138 (emphasis added). The plaintiffs in *Loudon* had sued alleging disclosure violations in a proxy statement for the 1995 annual meeting to elect directors. By the time the case was before the Delaware Supreme Court, the terms of the directors elected at that meeting "ha[d] come and gone." 700 A.2d at 141. The court held that because the terms had expired the claims for equitable and injunctive relief in the form of corrective disclosures and new elections were moot.

Likewise, the equitable and injunctive relief sought in the case at bar is moot. Paskowitz's suit was filed in January 2001, almost two years after the 1999 director election, the last of which he complains; and to the extent some of the individual appellees now hold directorships, that is not as a result of any of the three elections in question.

In addition, as we have touched on already, *Loudon* makes plain that there is no entitlement to *per se* nominal damages in a disclosure violation case. Paskowitz concedes that he did not sustain actual damages.

The circuit court properly granted the motion to dismiss Count V of the amended complaint.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**