[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 339 
This appeal and petition for a writ of mandamus arise out of a dispute over voting procedures for the election of the board of trustees of the Baldwin County Electric Membership Corporation ("the Cooperative") and over procedures for approving or amending the minutes from the Cooperative's annual meetings. The Cooperative and certain individuals serving on the board of trustees of the Cooperative[1] (collectively "BCEMC") appeal from the trial court's order issuing a preliminary injunction. BCEMC has also filed a petition for a writ of mandamus asking this Court to set aside the trial court's order. The appellees/respondents are nine individual members of the Cooperative ("the plaintiffs").[2] Our affirmance of the trial court's order in case no. 1040371 renders BCEMC's petition moot. We therefore deny the petition.
 Facts and Procedural History
The Cooperative is organized under Ala. Code 1975, §§ 37-6-1
through -49, for the purpose of supplying electric service to customers in Baldwin County and Monroe County. It is the largest electric cooperative in Alabama. Any person or entity that receives electric service from the Cooperative is eligible to become a member.[3] *Page 340 
The Cooperative is managed by a board of seven trustees. The Cooperative serves a territory that is divided into seven districts, and each district is represented by one trustee, who resides within the district he or she represents.[4] The Cooperative holds an annual meeting for the purposes of electing trustees and conducting its business. All members of the Cooperative are entitled to vote in the at-large trustee elections. According to the bylaws, the president of the board of trustees must appoint a nominating committee before the annual meeting. The nominating committee consists of two members from each district for which trustees are to be elected at that year's annual meeting plus one at-large member who is not from any of the districts for which elections are to be held. The nominating committee nominates at least one candidate for each district from which a trustee must be elected.
In 2004, the membership of the Cooperative was scheduled to elect trustees for districts 2, 4, and 6. Steven P. Brill, trustee representative from district 2 and the president of the board of trustees, appointed a nominating committee in accordance with the bylaws. The committee met to discuss nominations for the trustee positions. David Harms, a member of the Cooperative and one of the plaintiffs in this case, appeared before the nominating committee and requested to be nominated for the trustee position for district 2. The committee decided not to place Harms on the ballot. The committee nominated Brill for district 2, Tommie Werneth for district 4, and Peggy Vanover and Roy LeBlanc for district 6.
The bylaws of the Cooperative state that members can vote for trustees by mail-in ballot or in person at the annual meeting.[5] The secretary of the board of trustees is responsible for mailing members the official notice of the annual meeting, along with the mail-in ballots. If a member decides to vote by mail, he or she returns the completed ballot to the Cooperative by the deadline set by the board of trustees. However, the members may also attend the annual meeting and vote in person.
The bylaws also state that "[n]othing contained herein shall, however, prevent additional nominations from the floor at the meeting of the members." Therefore, according to the bylaws, the president must call for additional nominations to be made from the floor at the annual meeting. *Page 341 
However, because the deadline for mail-in voting is before the annual meeting, the bylaws do not include a procedure that allows members voting by mail to vote for any candidates who might be nominated from the floor at the annual meeting. The plaintiffs allege that this voting system violates the bylaws of the Cooperative and the parliamentary procedure requirements set out in Robert's Rules of Order.[6]
The 2004 annual meeting was scheduled to be held on December 9, 2004. In late October or early November 2004, after the nominating committee had met, the secretary of the board of trustees mailed notice of the annual meeting and mail-in voting ballots to members. Members opting to vote for trustees by mail had to return their ballots by December 2, 2004.
The plaintiffs sued BCEMC on November 18, 2004, seeking a declaratory judgment, a preliminary injunction, and a permanent injunction.[7] The plaintiffs requested that the trial court hold a hearing on their request for a preliminary injunction and that BCEMC be enjoined "from proceeding with the election of trustees at the December 9, 2004, annual meeting." The plaintiffs also requested that upon a final hearing the trial court enter a permanent injunction "enjoining [BCEMC] from proceeding with the election of the trustees at the [Cooperative's] annual meeting on December 9, 2004" and "ordering [that] the By-Laws of the [Cooperative] be amended to provide for a special or regular meeting of the membership to receive the nominating committee's report for nominations of the trustees and to allow nominations from the floor prior to the vote of the membership for trustees at the annual meeting of the corporation."
In addition to the dispute over the voting procedures for the election of trustees, the plaintiffs' complaint alleged that the method for approving or amending the minutes from past annual meetings was improper. The Cooperative held its 2003 annual meeting on March 28, 2003. During the meeting, the Cooperative conducted trustee elections for districts 5 and 7. The plaintiffs contended that Brill, serving as president of the board of trustees and presiding over the meeting, refused to recognize nominations from the floor. Witness testimony as to whether Brill allowed nominations from the floor at the 2003 meeting is conflicting. The minutes from the meeting indicate that Brill opened the floor to nominations for trustees for districts 5 and 7, but that no members made nominations from the floor.
The notice of the 2004 annual meeting that was mailed to members also contained *Page 342 
a ballot for members to vote to approve or disapprove the minutes from the March 2003 meeting. The plaintiffs allege that the voting procedure used by the board of trustees to obtain approval of the minutes of the 2003 annual meeting violates the bylaws of the Cooperative because it does not give members the opportunity to suggest amendments or additions to the minutes. Therefore, the plaintiffs' complaint also requested a judgment declaring "[t]hat the minutes of the March 28, 2003, annual meeting be submitted to the membership for corrections." In addition, the complaint requested a preliminary injunction ordering that "the annual Minutes of March 28, 2003, not be submitted for approval or disapproval to the membership without correction." Lastly, the complaint requested that upon final hearing the trial court enter a permanent injunction ordering "that the annual Minutes of March 28, 2003, not be submitted for approval or disapproval."
On November 24, 2004, the trial court held a hearing on the plaintiffs' request for the preliminary injunction. At the hearing, the plaintiffs presented the trial court with an amended complaint asking the trial court "to require that the [Cooperative] follow [its] bylaws in the election process for trustees." In addition, BCEMC filed a motion to dismiss or, in the alternative, for a summary judgment. The trial court denied the motion.
On December 2, 2004, the trial court granted in part the injunctive relief sought. The trial court found that when the Cooperative amended the bylaws to allow members to vote by mail, "a comprehensive study was not conducted to determine whether any other portions of the bylaws should be amended to accommodate mail voting." The trial court also found that there was an irreconcilable conflict in the bylaws between the mail-in voting provision and the provision allowing nominations from the floor. Therefore, the trial court held that it had a "duty" to interpret the procedural provisions together "so that no provision of [the bylaws] is arbitrarily disregarded." The trial court then ordered:
 "(a) The president of the [Cooperative] shall, at the annual meeting to be held on December 9, 2004, open the floor for nominations for a trustee for each district that must elect a trustee for a new term in numerical order of the districts.
 "(b) If there is no floor nomination for a particular district, the balloting and tabulation of mail votes for that district shall continue according to the by-laws and the result certified by the independent auditor together with the tabulation of the on-site votes. The result of the election for that district shall become final, and the person elected shall assume office at the proper time.
 "(c) If there is a floor nomination of a person qualified under the by-laws to serve as a trustee for a particular district, the president shall adjourn the annual meeting, as permitted by Robert[']s Rules of Order, 10th edition, with respect to the trustee election for that district or districts only. The president shall as soon as practicable select a date to reconvene the 2004 annual meeting for the purpose of completing the voting for the district trustee in question. The date shall be at the earliest possible time that will allow the secretary to prepare new ballots containing the same type of information for each person nominated for the office of trustee with respect to a particular district, whether nominated by the nominating committee or from the floor. The secretary shall also be responsible for enclosing with each ballot the notice of the re-convening of the adjourned Annual meeting, and the *Page 343 
court orders that all other provisions of the by-laws respecting mail ballots be complied with, including instructions for mail voting and the return of ballots by the required deadline.
 "(d) The president shall call for any corrections or additions to the minutes of the 2003 meeting. If there are none, the proposed minutes may be approved using the mail ballots and the on-site votes. If there are corrections or additions proposed at the meeting, no vote shall be taken unless there is a quorum not counting mailed ballots. If there is a quorum of the members at the meeting, as defined by the by-laws, then any additions or corrections to the minutes are to be submitted at the meeting, and the same shall be voted upon by the members present, as required by the by-laws and Robert's Rules of Order. If there is no quorum present, then the matter must be continued to the next Annual Meeting. The Secretary shall include any proposed amendment to the minutes on the next notice sent to the members and appropriate instructions for voting on the corrections."
The trial court denied the plaintiffs' request to enjoin the 2004 annual meeting until it ruled on other issues raised by the plaintiffs.
On December 3, 2004, BCEMC filed a motion requesting that the trial court amend its order. On December 6, 2004, BCEMC filed a petition for a writ of mandamus with this Court, asking us to set aside the trial court's order. On December 8, 2004, the trial court granted BCEMC's motion and amended its order to provide that if nominations were made from the floor at the annual meeting, then while the meeting was still taking place, the Cooperative should prepare ballots containing the names of all nominees. The trial court ordered that the Cooperative then distribute these ballots to the membership physically present. In addition, the trial court ordered that the Cooperative would not be required to print and mail new ballots to the membership with the names of all nominees until this Court ruled on the merits of their appeal, filed on December 8, 2004, and only if this Court so ordered.
On December 9, 2004, the Cooperative held its annual meeting. In compliance with the trial court's order, the president of the board of trustees called for any corrections or additions to the minutes prepared for the 2003 meeting. A member moved to correct the minutes, but the Cooperative continued the matter until the next annual meeting because a quorum was not present to vote on the motion. In compliance with the trial court's order, the president of the board of trustees called for nominations from the floor for trustee positions for districts 2, 4, and 6. The Cooperative accepted one nomination from the floor for each district. After nominations were closed, all nominees were given time to speak to the members present at the meeting. The Cooperative prepared ballots containing the names of both the candidates who had been selected by the nominating committee and the candidates who were nominated from the floor. Using these new ballots, the members present at the annual meeting voted. Consistent with the trial court's amended order, the Cooperative has not yet printed or mailed to members not present at the annual meeting ballots containing the names of those candidates nominated from the floor.
The Cooperative appealed the trial court's issuance of a preliminary injunction *Page 344 
in favor of the plaintiffs.[8] We have consolidated this appeal with BCEMC's petition for a writ of mandamus for the purpose of issuing one opinion.
 Standard of Review "We review a preliminary injunction to determine whether the trial court exceeded its discretion in granting the injunction. `[T]he grant of, or refusal to grant, a preliminary injunction rests largely in the discretion of the trial court.' Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So.2d 17, 19 (Ala. 1983). Moreover, if it cannot be shown that the trial court exceeded its discretion in either granting or refusing to grant a preliminary injunction, the court's `action will not be disturbed on appeal.' 428 So.2d at 19. A trial court exceeds its discretion when it `exceed[s] the bounds of reason, all the circumstances before the lower court being considered.' Valley Heating, Cooling, Elec. Co. v. Alabama Gas Corp., 286 Ala. 79, 82, 237 So.2d 470, 472 (1970)."
Johnson v. Willis, 893 So.2d 1138, 1140-41 (Ala. 2004) (footnote omitted).
 Analysis "In order for a trial court to grant a preliminary injunction, the plaintiff must show all of the following: (1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff."
Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala. 1994) (citing Martin v. First Fed. Sav. Loan Ass'n ofAndalusia, 559 So.2d 1075 (Ala. 1990); Board of DentalExam'rs of Alabama v. Franks, 507 So.2d 517
(Ala.Civ.App. 1986)).
 I. A.
BCEMC argues that the trial court erred in issuing the preliminary injunction because, it contends, the plaintiffs should have filed a derivative action, and, having failed to do so, they cannot succeed on the merits of the case.[9] We disagree.
The plaintiffs' complaint does not allege that the action was brought derivatively on behalf of the Cooperative; even *Page 345 
so, in analyzing whether a claim is derivative or direct, this Court looks to the nature of the alleged wrong rather than the designation used by the plaintiff in the complaint. SeePegram v. Hebding, 667 So.2d 696, 702 (Ala. 1995) (addressing whether a plaintiff stockholder's action against a corporation could be brought individually or whether it could be maintained only as a derivative action); McDonald v. U.S.Die Casting Dev. Co., 541 So.2d 1064, 1068-70
(Ala. 1989) (analyzing whether an individual shareholder could "sue in his own name" or whether the action should have been brought derivatively on behalf of the corporation); Green v.Bradley Constr., Inc., 431 So.2d 1226, 1228-29 (Ala. 1983) (addressing whether an action brought by a shareholder against a corporation as an "individual" or "direct" action was actually derivative in nature).
There are no Alabama cases addressing the precise question whether a claim alleging a violation of shareholder or member voting rights is a direct or derivative action. However, Rule 23.1, Ala. R. Civ. P., which sets out the procedural requirements for bringing a derivative action, refers to a derivative action as one
 "brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it. . . ."
Rule 23.1, Ala. R. Civ. P. (emphasis added). A derivative action has also been defined as an action "brought by one or more stockholders of a corporation to remedy or prevent a wrongagainst the corporation," while a direct action has been defined as an action "brought by one or a few shareholders to remedy or prevent a direct wrong to the plaintiffs." 19 Am. Jur.2d Corporations § 1934 (2004) (emphasis added). See also, 19 Am.Jur.2d Corporations
§ 1944 (2004) (stating that a derivative action is brought to enforce "a corporate right or to prevent or remedy a wrong to the corporation"); Black's Law Dictionary 475 (8th ed.2004) (defining a derivative action as an action "asserted by a shareholder on the corporation's behalf against a third party . . . because of the corporation's failure to take some action against the third party"). The derivative action provides a method by which shareholders or members can sue on behalf of the corporation or association when those in control of the corporation or association refuse to assert a claim belonging to it. Rule 23.1, Ala. R. Civ. P. See also Robbins v.Sanders, 890 So.2d 998, 1014 (Ala. 2004) ("In a shareholder-derivative action, the claims are asserted on behalf of a corporation. . . .").
The plaintiffs in this case allege that the board of trustees infringed upon their voting rights because, they say, the board failed to follow the procedures set out in the bylaws for the election of trustees and for approving or amending the minutes from annual meetings. "`It is well established that the constitution, bylaws, rules and regulations of a voluntary association constitute a contract between an association's members, which is binding upon each member so long as the bylaws, etc., remain in effect.'" Turner v. West RidgeApartments, Inc., 893 So.2d 332, 335 (Ala. 2004) (quotingWells v. Mobile County Bd. of Realtors, Inc.,387 So.2d 140, 142 (Ala. 1980)). The right to vote is granted to all members of the Cooperative under the bylaws and by statute.[10]
Thus, each *Page 346 
member of the Cooperative had a contractual right to vote. If the plaintiffs' voting rights have been violated, the plaintiffs — not the corporation — have suffered a harm. The plaintiffs can maintain this action directly because they are enforcing an individual right — the right to vote — rather than a right of the corporation. See Green,431 So.2d at 1229 (holding that an action for "fraudulent conversion of corporate assets" was derivative given that "if the allegations are true, [the assets] would by law have to be returned to the corporation as the assets are not solely [the plaintiffs] but belong to the corporation" (emphasis added)); General Motors Corp. v. Bell, 714 So.2d 268,290 (Ala. 1996) (holding that a plaintiff shareholder's action against a third party for fraud and wantonness resultingfrom a loss of corporate funds was a derivative — rather than direct — action); Pegram,667 So.2d at 702 (holding that a plaintiffs claims based upon allegations that a corporate officer defrauded the corporation were derivative). In addition, the relief sought by the plaintiffs here — an injunction to protect the plaintiffs' voting rights — benefits the plaintiffs, not the Cooperative.
Although there is no direct Alabama caselaw on point, there is authority from other jurisdictions to support the proposition that an action to protect shareholder or member voting rights can be maintained as a direct or individual action. InLipton v. News International, Plc, 514 A.2d 1075, 1079
(Del. 1986) (overruled in part on other grounds by Tooley v.Donaldson, Lufkin, Jenrette, Inc., 845 A.2d 1031,1037 (Del. 2004)), the Delaware Supreme Court addressed the question whether a shareholder's claim alleging that a corporate stock-exchange agreement violated shareholder voting rights was a direct or derivative action. The court held:
 "The right to vote is a contractual right that [the plaintiff] possesses as a shareholder of [the corporation] which is independent of any right of [the corporation]. The alleged interference with that right meets the requirements . . . in setting forth an individual action . . . See also Reifsnyder v. Pittsburgh Outdoor Advertising Co., 405 Pa. 142, 173 A.2d 319 (1961) (Pennsylvania Supreme Court found a direct, or individual, action, concerned primarily with the protection of the plaintiffs voting rights, where plaintiff alleged that his own votes had been wrongly diluted by the majority shareholder's improper vote on a resolution in which the majority shareholder had a pecuniary interest)."
514 A.2d at 1079. See also Paskowitz v. Wohlstadter,151 Md.App. 1, 10, 822 A.2d 1272, 1277 (2003) (stating that "`a wrong involving a contractual right of a shareholder, such as the right to vote, . . . exists independently of any right of the corporation'" (quoting Moran v. Household Int'l,Inc., 490 A.2d 1059, 1070 (Del.Ch. 1985))); G NAircraft, Inc. v. Boehm, 743 N.E.2d 227, 234 (Ind. 2001) (holding that "[d]irect actions are typically appropriate to enforce the right to vote"); Reifsnyder v. PittsburghOutdoor Adver. Co., 405 Pa. 142, 149, 173 A.2d 319, 322
(1961) ("The right to vote is basic and fundamental to most shares of stock and is independent of any right that the corporate entity possesses and the shareholder could enforce and protect such rights by bringing a direct action." (footnotes omitted)).
 B.
BCEMC also argues that under this Court's holding in Reznerv. Fairhope *Page 347 Single Tax Corp., 292 Ala. 456, 296 So.2d 166 (1974), the plaintiffs failed to state a cause of action. InRezner, plaintiff shareholders sued a corporation seeking to dissolve the corporation or, in the alternative, to prohibit the corporation from charging what they alleged was excessive rent. The Court stated: "It is a well-established rule of substantive law in this state that before stockholders can sue the corporation to remedy corporate wrongs, they must first apply to the corporation's directors for redress."Rezner, 292 Ala. at 460, 296 So.2d at 170. The Court held that the plaintiffs failed to state a cause of action "absent allegations that the internal remedies of the corporation had been invoked or to do so would be futile."Rezner, 292 Ala. at 459, 296 So.2d at 169.
BCEMC argues that under Rezner the plaintiffs were required to "apply to the corporation's directors for redress" before suing BCEMC. Rezner, 292 Ala. at 460,296 So.2d at 170. However, it is unclear whether the action inRezner was direct or derivative. The Court inRezner did not address whether the plaintiffs sued derivatively — on behalf of the corporation — or directly — as individuals. In addition, it is clear under Alabama caselaw that there is no director-demand requirement when a member or shareholder sues an association or corporation directly rather than derivatively.
In Boykin v. Arthur Andersen Co., 639 So.2d 504,508 (Ala. 1994), this Court, on appeal from the trial court's order granting the defendant's motion to dismiss, addressed whether the plaintiffs' claims against a corporation were direct or derivative. First, the Court explained that "[t]he trial court's rationale for dismissing the claims against the individual defendants was that the plaintiffs had failed to make a demand on the board of directors pursuant to Rule 23.1, Ala. R. Civ. P." Boykin, 639 So.2d at 507. This Court held that the plaintiffs' claims were not derivative and, therefore, that the trial court had erred in dismissing the claims.Boykin, 639 So.2d at 508. Thus, this Court reversed the trial court's judgment dismissing the plaintiffs' claims because the plaintiffs were not required to make a demand upon the board of directors before suing the corporation, given that the plaintiffs' claims were direct rather than derivative.Boykin, 639 So.2d at 508. See also, John W. Welch, Shareholder Individual and Derivative Actions:Underlying Rationales and the Closely Held Corporation, 9 J. Corp. L. 147, 151 (1984) ("[U]nlike plaintiffs seeking individual recoveries, plaintiffs bringing derivative actions must first exhaust internal corporate remedies."). We reject BCEMC's argument that, under Rezner, the plaintiffs were required to exhaust corporate remedies or to make a director demand in order to state a cause of action.
 II.
BCEMC also argues that the trial court exceeded its discretion in issuing the preliminary injunction because the injunction violated the business-judgment rule. We disagree.
Alabama's business-judgment rule was set out in Roberts v.Alabama Power Co., 404 So.2d 629, 631 (Ala. 1981) (quoting H. Henn, Law of Corporations § 242 (2d ed.1970), quoted with approval in Michaud v. Morris,603 So.2d 886, 888 (Ala. 1992)):
 "`If in the course of management, directors arrive at a decision, within the corporation's powers . . ., for which there is a reasonable basis, and they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interest of the corporation, a *Page 348 
court will not interfere with the internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss.'"
Although the business-judgment rule may apply to the business decisions of BCEMC, it is clear under Alabama caselaw that "`[j]udicial review of an organization's actions is available to a member of the organization who challenges such action[s] on the grounds that [they do] not conform to the organization's constitution or [bylaws].'" Dawkins v. Walker,794 So.2d 333, 338 (Ala. 2001) (quoting Mitchell v. ConcernedCitizens of CVEC, Inc., 486 So.2d 1283, 1287 (Ala. 1986)). It is clear under Alabama caselaw that the trial court acted properly in reviewing whether BCEMC was acting within the scope of its powers as articulated in its bylaws. SeeDawkins, 794 So.2d at 338 (addressing whether the board of directors had authority under its bylaws to remove one of the board members); Mitchell, 486 So.2d at 1287 (addressing whether the board of directors of an electric cooperative had authority to remove a board member under the powers granted to the board in the cooperative's bylaws). Further, the bylaws of the Cooperative are clearly binding upon BCEMC.Dawkins, 794 So.2d at 339 ("`It is well established that the constitution, bylaws, rule and regulations of a voluntary association constitute a contract binding upon each member so long as the bylaws, etc., remain in effect.'" (quotingWells v. Mobile County Bd. of Realtors,387 So.2d at 142)). "The business judgment rule . . . generally insulates the acts of directors done in good faith and with sound business judgment from interference by the courts. . . . [A]n act of the directors beyond the limits of their powers as defined by statute or bylaw is also grounds for interference by the courts." 18B Am.Jur.2d Corporations § 1296 (2004) (emphasis added). Further, BCEMC has not cited any authority to support its argument that the business-judgment rule applies to decisions of an association construing and applying the bylaws of the association. Therefore, we reject BCEMC's contention that the business-judgment rule applies to the facts of this case.[11]
 III.
BCEMC also argues that under this Court's holding inFairhope Single Tax Corp. v. Rezner, 527 So.2d 1232,1234 (Ala. 1987), the trial court impermissibly interfered with the internal management of the Cooperative by essentially amending the bylaws of the Cooperative. This Court has held that "`[o]rdinarily a court of equity will not interfere with the internal affairs of a voluntary association, or assume jurisdiction to restrain its acts done or attempted in accordance with its rules and *Page 349 
within the scope of its powers.'" Dawkins,794 So.2d at 337-38 (quoting Medical Soc'y of Mobile County v.Walker, 245 Ala. 135, 140, 16 So.2d 321, 325 (1944)).See also Fairhope Single Tax Corp., 527 So.2d at 1236. However, BCEMC never made this argument before the trial court, and it made this argument to this Court only in its reply brief. Thus, this argument has not been preserved for review. SeeMarks v. Tenbrunsel, 910 So.2d 1255, 1263 (Ala. 2005) ("`This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.'" (quotingAndrews v. Merritt Oil Co., 612 So.2d 409, 410
(Ala. 1992))), and Byrd v. Lamar, 846 So.2d 334, 341
(Ala. 2002) (holding that it is a "settled rule that this Court does not address issues raised for the first time in a reply brief).
 Conclusion
We reject BCEMC's argument that the plaintiffs could not succeed upon the merits of this case because the action should have been filed derivatively, and we hold that this action was properly brought as a direct action. In addition, we reject BCEMC's argument that the trial court's judgment violated the business-judgment rule, and BCEMC failed to preserve its argument that the trial court's order impermissibly interferes with the internal management of the corporation under this Court's holding in Fairhope Single Tax Corp.,527 So.2d at 1236. Therefore, the judgment of the trial court is affirmed. Our disposition of this appeal renders moot BCEMC's petition for the writ of mandamus, and we therefore deny the petition.
1040371 — AFFIRMED.
1040362 — PETITION DENIED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, BOLIN, and PARKER, JJ., concur.
LYONS and STUART, JJ., recuse themselves.
[1] The individuals include J. Thomas Bradley, Jr., Steven P. Brill, Tommie Werneth, John D. Taylor, Jr., Peggy R. Vanover, and Thomas J. Helton. Aubury L. Fuller, a defendant below, also served on the Cooperative's board of trustees; Fuller, however, is not a party on appeal.
[2] The appellees include Robert Lee Catrett, Wesley Grant, John Gregg, David Harms, Davida Hastie, George P. Kaiser, Willard Penry, Henry Vick, and Cecil Ward.
[3] The Cooperative's bylaws state:
 "Any person, firm, association, corporation, or body politic or subdivision thereof will become a member of Baldwin County Electric Membership Corporation (hereinafter called the `Cooperative') upon receipt of electric service from the Cooperative, provided that the person or entity has first:
 "(a) Made a written application for membership therein;
 "(b) Agreed to purchase from the Cooperative electric energy as hereinafter specified;
 "(c) Agreed to comply with and be bound by the articles of incorporation and bylaws of the Cooperative and any rules and regulations adopted by the board; and
 "(d) Paid the membership fee hereinafter specified."
[4] The bylaws of the Cooperative also state that "[t]he officers of the Cooperative shall be a President, Vice-President, Secretary, Treasurer, and such other officers as may be determined by the board from time to time." Those officers are "elected annually by and from the board [of trustees]." In 2004, Steven P. Brill, the trustee representative from district 2, was selected by the board of trustees to serve as president of the Cooperative.
[5] An amendment to the bylaws permitting the membership to vote in the election of trustees by mail was approved on July 22, 1999. Before this amendment, members were required to attend the annual meeting to vote in the election of trustees. The amended bylaws state:
 "Any member of record shall be entitled to only one vote upon each matter submitted to a vote of the members. Any member of record may vote in person or by mail on all matters requiring a vote of the membership, except for matters involving the disposition of Cooperative property pursuant to Article VIII hereof which requires that members vote in person."
[6] The bylaws state that "[p]arliamentary procedure as established by the last edition of Robert[']s Rules ofOrder shall govern all issues at the meetings of the members and trustees of the Cooperative."
[7] The trial court has not yet adjudicated the plaintiffs' request for a declaratory judgment or a permanent injunction. The complaint requested that a judgment be entered declaring:
 "1. That the Defendants be required to comply with the By-Laws of the corporation by following Robert[']s Rules of Order in the election process.
 "2. That the By-Laws of the Baldwin County Electric Membership Corporation be amended to provide for a special or regular meeting of the membership to receive the nominating committee's report for nominations of the trustees and to allow nominations from the floor prior to the vote of the membership for trustees at the annual meeting of the corporation.
 "3. That the president of the Baldwin County Electric Membership Corporation allow nominations from the floor at said special or regular meeting.
 "4. That the tabulation or votes for trustees be made by an independent accountant not employed by the corporation."
[8] The issuance of the preliminary injunction is an appealable order; Rule 4(a)(1)(A), Ala. R.App. P., provides that a party can appeal from "any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction."
[9] To maintain a derivative action, a plaintiff must first meet the procedural requirements set out in Rule 23.1, Ala. R. Civ. P. Rule 23.1 states that to maintain a derivative action, the plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority. . . ."See also James v. James, 768 So.2d 356, 360 (Ala. 2000) ("Before a shareholder can be awarded damages on a derivative claim, the shareholder must make a presuit demand on the board of directors of the corporation to correct the wrongs alleged, so that the corporation can deal with the problems internally if possible."). The plaintiff's effort to obtain action from the board of directors is known as the "director demand." Elginv. Alfa Corp., 598 So.2d 807, 814 (Ala. 1992).
There is no evidence in the record indicating that the plaintiffs made a demand upon the board of trustees before filing this action. In addition, the plaintiffs did not allege in their complaint that they had made a demand upon the Cooperative's board of trustees. If the plaintiffs should have brought this action derivatively, as BCEMC contends, then the plaintiffs lack standing to maintain the action because no evidence was presented indicating that they met the director-demand requirement.
[10] The bylaws of the Cooperative state that "[o]nly members of record shall be entitled to vote on matters submitted to a vote of the members. Each member of record shall be entitled to only one vote upon each matter submitted to a vote of the members." See also § 37-6-9(b), Ala. Code 1975 ("Each member [of an electric cooperative] shall be entitled to one vote on each matter submitted to a vote at a meeting.").
[11] Decisions from other jurisdictions support this holding.See Mueller v. Zimmer, 124 P.3d 340, 352 (Wyo. 2005) ("`As the name implies, a necessary predicate for the application of the business judgment rule is that the directors' decision be that of a business judgment and not a decision . . . which construes and applies a statute and a corporate bylaw.'" (quoting Lake Monticello Owners' Ass'nv. Lake, 250 Va. 565, 571, 463 S.E.2d 652, 656 (1995)));Micheve, L.L.C. v. Wyndham Place at Freehold CondominiumAss'n, 381 N.J.Super. 148, 154, 885 A.2d 35, 39 (2005) (holding that "the business judgment rule, which governs judicial review of decisions within the scope of [the association's] discretionary authority, has no applicability to this case" because the actions of the defendant violated the bylaws of the association); Matanuska Elec. Ass'n v.Waterman, 87 P.3d 820, 824 (Alaska 2004) (holding that "reliance on the business judgment rule [was] misplaced" in a case alleging that the board of directors of an electric cooperative violated the bylaws of the cooperative).